1    LATHAM & WATKINS LLP
     Elizabeth L. Deeley (CA Bar No. 230798)
2        elizabeth.deeley@lw.com
     505 Montgomery Street, Suite 2000
3    San Francisco, California 94111-6538
     Telephone: +1.415.391.0600
4    Facsimile: +1.415.395.8095

5    Susan E. Engel (*pro hac vice*)
         susan.engel@lw.com
6    555 Eleventh Street, N.W., Suite 1000
     Washington, D.C. 20004-1304
7    Telephone: +1.202.637.2200
     Facsimile: +1.202.637.2201

8
     Serrin Turner (*pro hac vice*)
9        serrin.turner@lw.com
     885 Third Avenue
10   New York, NY 10022-4834
     Telephone: +1.212.906.1200
11   Facsimile: +1.212.751.4864

12   Attorneys for Defendant *Zynga Inc.*

13                  **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15                            **OAKLAND DIVISION**

16

17   I.C., a minor, by and through his natural       Case No. 4:20-cv-01539-YGR
     parent, NASIM CHAUDHRI, and AMY
18   GITRE, individually and on behalf of all        **DEFENDANT ZYNGA INC.'S NOTICE**
     others similarly situated,                      **OF MOTION AND MOTION TO**
19                                                    **COMPEL ARBITRATION OR, IN THE**
                           Plaintiffs,               **ALTERNATIVE, COMPEL**
20                                                   **DISCOVERY; MEMORANDUM OF**
                    v.                                **POINTS AND AUTHORITIES IN**
21                                                    **SUPPORT**
     ZYNGA INC.,
22                                                   Date:   June 16, 2020
                           Defendant.                Time: 2:00 p.m.
23                                                   Court: Courtroom 1, 4th Floor
                                                     Hon.   Yvonne Gonzalez Rogers
24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 16, 2020, at 2:00 p.m., in Courtroom 1 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, Defendant Zynga Inc. ("Zynga") will and hereby does move for an order compelling arbitration of Plaintiffs' claims, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and staying all proceedings in this action pending conclusion of the arbitration.[1]

Zynga's motion is based on (1) this Notice of Motion and Motion, (2) the Memorandum of Points and Authorities, (3) the concurrently filed Declarations of Serrin A. Turner, Andrea Courant and Jessup Ferris, (4) the pleadings and papers on file in this action, (5) the arguments of counsel, and (6) any other matter that the Court may properly consider.

**STATEMENT OF RELIEF SOUGHT:**

Zynga seeks an order pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, compelling the arbitration of all of Plaintiffs' claims and staying all proceedings in this action pending conclusion of the arbitration.

DATED:  May 8, 2020                LATHAM & WATKINS LLP

*/s/ Elizabeth L. Deeley*
Elizabeth L. Deeley (CA Bar No. 230798)
*elizabeth.deeley@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

---

[1] This motion satisfies Zynga's obligation to respond to the Complaint at this stage. *See Marchand v. Northrop Grumman Corp.*, No. 16-cv-06825-BLF, 2017 WL 2633132, at *6 (N.D. Cal. June 19, 2017) ("Defendant's Motion to Compel Arbitration and to Dismiss suffices as a 'responsive pleading' to Plaintiff's Complaint") (citation omitted); *see generally Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607-08 (10th Cir. 2011) (explaining that parties moving to compel arbitration need not file an answer or assert potential defenses because such a requirement would undercut the "right *not to litigate*"). Zynga reserves the right to file a Rule 12 motion at a later time. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that a prior motion to dismiss or stay based on grounds other than Rule 12 did not bar a later Rule 12(b) motion).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Susan E. Engel (*pro hac vice*)
    susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

Serrin Turner (*pro hac vice*)
    serrin.turner@lw.com
885 Third Avenue
New York, NY 10022-4834
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

Attorneys for Defendant *Zynga Inc*

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 2

    A.   All Zynga Players Are Required to Agree to the Terms of Service ..................... 2

    B.   Zynga's Terms Contain a Broad, Mandatory Arbitration Provision ................... 3

    C.   Like All Zynga Players, Plaintiffs Agreed to the Terms, Including the Arbitration Provision ....................................................................................... 4

        1.   Amy Gitre ................................................................................................ 5

        2.   I.C. .......................................................................................................... 6

    D.   Plaintiffs Ignored Their Agreements and Filed This Complaint ......................... 6

III. LEGAL STANDARD .......................................................................................... 7

IV.  ARGUMENT ...................................................................................................... 8

    A.   Plaintiffs Agreed to Arbitration and Their Agreements Must Be Enforced ............................................................................................................ 8

    B.   The Terms Clearly and Unmistakably Delegate Any Arbitrability Questions to an Arbitrator ............................................................................... 10

    C.   Plaintiff I.C.'s Disaffirmance Allegation Is for the Arbitrator ......................... 12

    D.   If the Court Finds There Is a Genuine Factual Dispute as to Whether Plaintiffs Agreed to Arbitrate, the Court Should Compel Limited Discovery on the Issue ...................................................................... 12

V.   CONCLUSION .................................................................................................. 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...............................................................7, 10, 11, 12

*Childs v. Williams*,
757 P.2d 302 (Kan. 1988) ..............................................................................12

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ...........................................................10, 11

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012) ..............................................................12

*Dekker v. Vivint Solar, Inc.*,
No. C 19-07918 WHA, 2020 WL 1429740 (N.D. Cal. Mar. 24, 2019) ...........11, 12

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ............................................................8

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) ............................................................12

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ......................................................................................8

*Fridman v. Uber Techs., Inc.*,
No. 18-cv-02815-HSG, 2019 WL 1385887 (N.D. Cal. Mar. 27, 2019) ...............11

*Green Tree Fin. Corp.-Ala v. Randolph*,
531 U.S. 79 (2000) ........................................................................................7

*Henry Schein Inc. v. Archer & White Sales Inc.*,
139 S. Ct. 524 (2019) .............................................................................7, 10, 12

*Kum Tat Ltd. v. Linden Ox Pasture,LLC*,
845 F.3d 979 (9th Cir. 2017) ........................................................................7, 8

*Leicht v. Bateman Eichler, Hill Richards, Inc.*,
848 F.2d 130 (9th Cir. 1988) ...........................................................................8

*Lomeli v. Midland Funding, LLC*,
No. 19-CV-01141-LHK, 2019 WL 4695279 (N.D. Cal. Sept. 26, 2019) .................8

*Manning v. Uber Techs. Inc.*,
358 F. Supp. 3d 962 (N.D. Cal. 2019) ............................................................13

*Martinez v. Terminex Int'l Co., L.P.*,
  No. 15-cv-00619-THE, 2015 WL 12826468 (N.D. Cal. May 20, 2015)................................13

*McLellan v. Fitbit, Inc.*,
  No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ................................11

*McLellan v. Fitbit, Inc.*,
  No. 3:16-CV-00036-JD, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018)................................9

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)...........................................................................................10

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ....................................................................................11

*Mortgage Plus, Inc. v. DocMagic, Inc.*,
  No. 03–2582–GTV–DJW, 2004 WL 2331918 (D. Kan. Aug. 23, 2004).............................8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).......................................................................................................8

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ...................................................................................8, 9

*Norcia v. Samsung Telecomms. Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ....................................................................................7

*Paxton v. Macy's W. Stores, Inc.*,
  No. 118CV00132LJOSKO, 2018 WL 4297763 (E.D. Cal. Sept. 7, 2018) .........................13

*Peter v. DoorDash, Inc.*,
  No. 19-CV-06098-JST, 2020 WL 1967568 (N.D. Cal. Apr. 23, 2020) ...........................10

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010)...................................................................................................7, 12

*Rowan v. Brookdale Senior Living Cmtys., Inc.*,
  647 F. App'x 607 (6th Cir. 2016) ................................................................................8

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ......................................................................................13

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .........................................................................10

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
  925 F.2d 1136 (9th Cir. 1991) ....................................................................................12

*In re Uber Text Messaging*,
  No. 18-CV-02931-HSG, 2019 WL 2509337 (N.D. Cal. Jun. 18, 2019) ..........................7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

ZYNGA'S MOT. TO COMPEL ARBITRATION
CASE NO. 4:20-CV-01539-YGR

*Williams v. Eaze*,
    417 F. Supp. 3d 1233 (N.D. Cal. 2019) ...................................................................11

## STATUTES

Cal. Fam. Code § 6710 ..........................................................................................................12

Federal Arbitration Act
    FAA............................................................................................................................7, 13
    §§ 1-16 ...........................................................................................................................7
    § 2..................................................................................................................................7
    § 3..................................................................................................................................8
    § 4............................................................................................................................7, 13

## TREATISES

Restatement (Second) Contracts § 7 comment b (1981) ...........................................................12

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

On September 12, 2019, Zynga—a leading developer of popular online mobile games—disclosed that criminal hackers had illegally accessed player account information for certain Zynga games (the "Attack").  Compl. ¶ 46 & n.25 (citing Sept. 12, 2019 Player Security Announcement).  Nearly six months later, this lawsuit was filed by two alleged Zynga players purportedly aggrieved by the Attack.

The only information Plaintiffs allege was taken consists of players' names, email addresses, user ID numbers on Zynga and Facebook, and their *hashed* (*i.e.*, cryptographically protected) Zynga passwords.  *Id.* ¶ 42.  Plaintiffs do not allege that any of the information accessed in the attack was financially sensitive, such as social security numbers or credit card numbers—information that Zynga does not even collect.  *Id.* ¶¶ 22, 42.  Plaintiffs do not claim to have incurred any cost from the Attack of any kind.  Nor do they allege any misuse of their Zynga accounts following the Attack—indeed, they acknowledge Zynga's announcement at the time, which explained that Zynga promptly took steps to protect affected players' accounts from unauthorized logins.  *Id.* ¶ 46 & n.25.  Plaintiffs nonetheless demand unspecified damages, based on vague and unexplained assertions that the Attack has caused them to "suffer harm and face the imminent risk of future harm."  *Id.* ¶ 74.

The case is flawed for many reasons, but first among them is that it belongs in arbitration, not this forum.  All Zynga players are required to accept Zynga's Terms of Service ("Terms") when they play Zynga games.  And those Terms have long contained a mandatory arbitration provision that broadly applies to all claims "relating to" Zynga or its games.  The provision also clearly and unmistakably delegates any disputes about arbitrability to an arbitrator.  Plaintiffs, who accepted Zynga's Terms, are no exception to the requirements that their claims be arbitrated, and that any disputes about arbitrability be determined by the arbitrator.

Accordingly, this Court should compel Plaintiffs to arbitrate their claims and stay this action pending the outcome of arbitration.

## II.    BACKGROUND

### A.    All Zynga Players Are Required to Agree to the Terms of Service

Zynga operates interactive games that can be played on mobile devices, such as Apple or Android phones or tablets, and on social networking platforms, such as Facebook.  Compl. ¶¶ 13-14; Declaration of Jessup Ferris ("Ferris Decl.") ¶ 3.  In order to play any Zynga game, regardless of the device or platform, a player is required to accept Zynga's Terms of Service (the "Terms").  Ferris Decl. ¶ 5.  That requirement extends to the two games Plaintiffs allege were the target of the Attack: Words With Friends and Draw Something.  Compl. ¶ 43; Ferris Decl. ¶ 5.[2]  When playing either game for the first time, a player is shown a notification on their screen that expressly requires the user to agree to the Terms in order to continue, along with a link the user can follow to review the Terms before accepting.  Ferris Decl. ¶¶ 6-11.  There is no way for the player to go on to play without agreeing to the Terms first.  *Id.*

Likewise, whenever the Terms materially change, Words With Friends and Draw Something players must agree to the amended Terms in order to keep playing.  The Terms themselves have long provided that Zynga may change the Terms at any time by posting the amended Terms online, and that players will be deemed to have accepted such changes by continuing to play.  Courant Decl., Ex. 3 (current) at 3; *see also id.*, Ex. 1 (Aug. 2014) at 2.[3]  While not required under the Terms, Zynga's practice is also to notify players of material changes through in-game notifications that require an existing player to affirmatively accept the amended Terms in order to continue playing.  Ferris Decl. ¶ 12.  At times, Zynga has sent email notifications about changes to the Terms as well.  *Id.*

---

[2]  The Complaint also refers to "OMGPOP" as a Zynga game.  Compl. ¶ 43.  However, this is not the name of any game, but rather is the name of a company acquired by Zynga in 2012.  Ferris Decl. p.1 n.1.

[3]  The current version of Zynga's Terms of Service (effective December 18, 2019) is attached as Exhibit 3 to the Declaration of Andrea Courant ("Courant Decl.").  Prior versions, including the first version to contain a mandatory arbitration provision (effective August 11, 2014), are attached as Exhibits 1 and 2 to the same Declaration.

**B.     Zynga's Terms Contain a Broad, Mandatory Arbitration Provision**

Zynga's Terms have required players to arbitrate any dispute with Zynga since August 2014.  Courant Decl., Ex. 1 § 17.  Zynga sent email notifications about the August 2014 update to the Terms around the time of the change, advising players that the new Terms would go into effect on August 11, 2014, and providing a link they could use to review the changes.  Ferris Decl. ¶ 13.  The email specifically highlighted the addition of the new mandatory arbitration provision:

> In addition to updating our Privacy Policy and Terms of Service to reflect how our business has changed and to make them more readable, we have also included some changes regarding how we will resolve disputes if they arise. In particular, for our U.S. and Canadian players, we've added a section to our Terms of Service agreeing to resolve most disputes using arbitration (if we can't get it resolved through our customer service channels, that is). Arbitration is usually a faster and more efficient alternative to going to court.

*Id.*

The mandatory arbitration provision has remained in the Terms since 2014.  *Compare* Courant Decl., Ex. 3 (current) § 15, *with id.*, Ex. 1 (Aug. 2014) § 17.  Users are put on notice of the arbitration provision in the very first sentence of the Terms, which states in boldface, all-capitalized type:

> IMPORTANT NOTICE: FOR U.S. AND CANADIAN PLAYERS, AS DESCRIBED BELOW, DISPUTES BETWEEN YOU AND ZYNGA MUST BE RESOLVED BY BINDING ARBITRATION AND ON AN INDIVIDUAL BASIS UNLESS AN EXCEPTION APPLIES.

Section 15 contains the arbitration provision itself, which states:

> By voluntarily accepting these Terms (and in many of our Services by voluntarily clicking or tapping an in-game button to affirmatively indicate your agreement to these Terms), *you, Zynga, and any member of the Zynga Corporate Family all agree to the fullest extent permitted by law to resolve any claims arising out of, relating to, or in connection with the Terms, Feature Terms, Community Rules, your relationship with us, or Zynga's Services, including but not limited to your use of the Services and information you provide via the Services, through final and binding arbitration.* This applies to all claims under any legal theory, unless the claim fits within the Exceptions to Agreement to Arbitrate identified below. This agreement to arbitrate also applies even after you stop using your Zynga account or delete it.

*Id.*, Ex. 3 (current) at 13 (emphasis in original); *see also id.*, Ex. 1 (Aug. 2014) at 11-12.

Section 15 further explains that "[t]he American Arbitration Association ('AAA') will control any arbitration between" Zynga and its players, linking to the AAA website where its rules are posted. *Id.*, Ex. 3 (current) at 14; *see also id.*, Ex. 1 (Aug. 2014) at 13.  Consistent with the AAA rules, Section 15 contains an express delegation provision, which provides that the arbitrator will decide any disagreement about the arbitrability of a dispute:

> If any party disagrees about whether this Section 15 (or any portion of this Section 15, including without limitation the provisions relating to arbitration, class action waiver, and opting out) can be enforced or whether it applies to the dispute, the parties all agree that the arbitrator will decide that, too.

*Id.*, Ex. 3 (current) at 14; *see also id.*, Ex. 1 (Aug. 2014) at 12.

Finally, Section 15 has a subsection entitled "No Class Actions," which provides that a party may only bring suit on an individual basis. *Id.*, Ex. 3 (current) at 15; *id.*, Ex. 1 (Aug. 2014) at 12-13.  The subsection emphasizes in plain terms and bold font:

> **That means: The parties agree that neither you nor Zynga nor any member of the Zynga Corporate Family can bring a claim as a plaintiff or class member in a class action, consolidated action, or representative action.**

*Id.*, Ex. 3 (current) at 15; *see also id.*, Ex. 1 (Aug. 2014) at 12.

### C.   Like All Zynga Players, Plaintiffs Agreed to the Terms, Including the Arbitration Provision

Plaintiffs provide scant information about themselves: Plaintiff Amy Gitre is alleged to reside in Michigan, while the other Plaintiff, alleged to be a minor resident of Kansas, is described only as "I.C." with a parent named "Nasim Chaudhri."  Compl. ¶¶ 6-7.  Both allege they "had a Zynga account" at the time of the incidents.  *Id.*  They provide no further details.  *Id.*  Zynga has made multiple pre-motion requests to Plaintiffs to provide the Zynga IDs or email addresses associated with their accounts, or even to identify the Zynga games they have played, so that Zynga could easily retrieve records of each Plaintiff's account activity and efficiently present the facts to the Court.  Plaintiffs have so far refused.  *See* Declaration of Serrin Turner ("Turner Decl.") ¶¶ 3-7.  No matter, however; the facts available confirm that Plaintiffs, like every other Zynga user, had to and did agree to the Terms—including the mandatory arbitration provision.

### 1.   Amy Gitre

Zynga has located records for a Words With Friends player named "Amy Gitre" who accesses the game on an Android device from a location in Michigan.  Ferris Decl. ¶ 18.  Zynga does not have records of any other player associated with this name and location.  *Id.*

According to Zynga's records, Ms. Gitre was a Words With Friends player at the time the mandatory arbitration provision was added to the Terms in August 2014.  *Id.*  Like all players at the time who provided Zynga their email address, Ms. Gitre was sent the email notification referenced above, advising that the Terms were being amended to include a mandatory arbitration provision.  *Id.* ¶ 20.  She also received an in-game notification around the same time, requiring her to accept the amended Terms in order to continue.  *Id.*  Zynga's records show that Ms. Gitre accepted the amended TOS on September 20, 2014.  *Id.*

Ms. Gitre has continued playing Words With Friends to the present time, and she has continued accepting periodic updates to the Terms in order to do so.  *Id.* ¶¶ 18-19.  Zynga's Terms were last updated in December 2019.  *Id.* ¶ 21.  Again, like all players, Ms. Gitre received an in-game notification about the update, which for Android users (like Ms. Gitre) appeared as follows:



ZYNGA'S MOT. TO COMPEL ARBITRATION
CASE NO. 4:20-CV-01539-YGR

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Id.* ¶ 15.  Zynga's records show that Ms. Gitre accepted these latest amended Terms on December 23, 2019.  *Id.* ¶¶ 15, 21.

### 2.   I.C.

Plaintiffs have refused to provide even the first and last name of "I.C." to Zynga in response to Zynga's requests.  Turner Decl. ¶ 5.  While his claims are brought through a parent with a last name "Chaudhri," Zynga has no records of any player with a first name starting with "I" and last name "Chaudhri" located in Kansas.  Ferris Decl. ¶ 23.  Notably, Zynga does not validate player names, so it is possible that "I.C." created an account without providing his actual name.  *Id.* ¶ 24.

In any event, the Complaint alleges that "I.C." has a Zynga account.  Compl. ¶ 6.  And as explained, in order to have a Zynga account, a player must accept Zynga's Terms.  Indeed, the Complaint implicitly acknowledges that "I.C." did so, because "I.C." purports to "disaffirm[] Zynga's Terms of Service" in the Complaint.  *Id.* ¶ 33.  Had "I.C." not accepted the Terms, there would be no agreement to disaffirm.  Further, the Complaint alleges that "I.C." is presently a minor.  *Id.* ¶ 6.  It follows that he had to have accepted the Terms at some point since August 2014, when the mandatory arbitration provision was added.  Before then, "I.C." would have been under the age of 13, and the Terms would have prohibited him from creating an account, Courant Decl., Ex. 3 at 4—in which case, again, he would have no agreement with Zynga to disaffirm.

### D.   Plaintiffs Ignored Their Agreements and Filed This Complaint

Even though, in accepting the Terms, Plaintiffs agreed they would arbitrate any disputes with Zynga and would not bring any claims as a putative representative of a class, on March 3, 2020, Plaintiffs filed this action against Zynga purporting to represent a class of people whose information was compromised in the Attack.  Compl. ¶ 8.  While they fail to specify any harm that has befallen them in the six months since the Attack, Plaintiffs bring claims for damages under various statutory and common-law theories.  *Id.* ¶¶ 3, 196-231.  And despite the Complaint's acknowledgement of Zynga's announcement after the Attack explaining that affected accounts had been secured, and Plaintiffs' failure to identify any further security incidents affecting their Zynga accounts, Plaintiffs also seek injunctive relief on the basis that their information stored with Zynga is purportedly at "imminent risk" of another breach.  *Id.* ¶¶ 232-251.

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements and reflects a strong policy in favor of arbitration.  9 U.S.C. §§ 1-16; *see also* Courant Decl., Ex. 3 (current) at 16 (recognizing that the FAA governs interpretation and enforcement of the Zynga arbitration agreement).  Section 2 of the FAA provides that any written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to "petition any United States district court ... for an order directing that ... arbitration proceed in the manner provided for in such agreement."  *Id*. § 4.

In ruling on a motion to compel arbitration, the district court's role is generally limited to determining whether there is an agreement to arbitrate between the parties that covers the dispute.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  However, the parties may agree to delegate "'gateway' questions of 'arbitrability'" to an arbitrator.  *Henry Schein Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524, 529 (2019) (citation omitted).  Where such a delegation is "clear and unmistakable," *id.* at 530, only two issues are left to the court's decision:  (i) whether the parties "entered into a contract in the first place," *In re Uber Text Messaging*, No. 18-CV-02931-HSG, 2019 WL 2509337, at *6 (N.D. Cal. Jun. 18, 2019); and (ii) any challenges to "the validity of the delegation provision in particular," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010).  A party may *not* seek judicial resolution of the validity of the arbitration agreement as a whole in the face of a delegation provision.  *See Kum Tat Ltd. v. Linden Ox Pasture*, LLC, 845 F.3d 979, 983 (9th Cir. 2017) (distinguishing "challenges to the *validity of a contract* with an arbitration clause" from "challenges to the *very existence of the contract*, [the latter of which] are, in general, properly directed to the court") (emphasis added).

The party seeking arbitration must prove the existence of an agreement by a preponderance of the evidence, *see Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017), and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91 (2000).  The

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

court may consider "affidavits, declarations, or other competent evidence" in deciding whether the existence of an arbitration agreement has been proven by a preponderance of evidence. *Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019). "The nonmoving party's opposition … must consist of more than unsupported allegations or denials." *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Where a dispute is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until arbitration has been had." 9 U.S.C. § 3; *see also Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 133 (9th Cir. 1988).

## IV.   ARGUMENT

### A.   Plaintiffs Agreed to Arbitration and Their Agreements Must Be Enforced

The threshold question here is whether Plaintiffs actually entered into an agreement in the first instance. *See Kum Tat Ltd.*, 845 F.3d at 983; *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1248 (N.D. Cal. 2019). In answering that question, "federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) (internal quotation marks omitted). Whether under the law of Michigan, Kansas, or California,[4] formation of a contract requires a "mutual manifestation of assent," which turns on whether the consumer has actual or constructive notice of the terms of the agreement. *Id.* at 1175-77.

That manifestation of assent exists here. Both Plaintiffs allege they are Zynga players. As such, they both had to affirmatively acknowledge the Terms through in-game prompts in order to

---

[4] The Terms contain a California choice-of-law provision, but the applicability of that provision turns on whether the parties agreed to be bound by the Terms in the first instance. *See Nguyen*, 763 F.3d at 1175 (recognizing choice of law provision did not apply to the question of contract formation but finding no difference in New York and California law on "mutual assent"); *see also Eiess*, 404 F. Supp. 3d at 1249. Plaintiffs allege they are citizens of Michigan and Kansas, Compl. ¶¶ 6-7, and there is no evidence that they agreed to Zynga's Terms anywhere other than where they reside. Like California, both states require mutual assent. *See, e.g.*, *Mortgage Plus, Inc. v. DocMagic, Inc.*, No. 03–2582–GTV–DJW, 2004 WL 2331918, at *5 (D. Kan. Aug. 23, 2004) (finding mutual assent to clickwrap agreement under Kansas law); *Rowan v. Brookdale Senior Living Cmtys., Inc.*, 647 F. App'x 607, 611 (6th Cir. 2016) (finding mutual assent to arbitration agreement under Michigan law).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  play Words With Friends or Draw Something—the only two games the Complaint alleges to have

2  been affected by the Attack.  Because Plaintiffs manifested their assent to the Terms through those

3  in-game prompts, they are bound by the mandatory arbitration agreement contained therein.

4          Zynga's records of Ms. Gitre's activity confirm this.  They show that, after the mandatory

5  arbitration provision was added to the Terms in August 2014, Ms. Gitre repeatedly accepted the

6  Terms, including most recently on December 23, 2019, when Zynga provided her with an in-game

7  notification requiring her to agree to the Terms—which were conspicuously linked in the

8  notification—in order to continue playing.  Ferris Decl. ¶ 21.  Ms. Gitre clicked "Accept" on that

9  notification, and she has continued to play Words With Friends up to the present time.  *Id.* ¶¶ 18,

10 21.

11         While Plaintiffs' refusal to provide a Zynga ID or email address for "I.C." (or even his full

12 name) hampers Zynga's ability to locate specific records of his account activity, the Complaint

13 implicitly admits that "I.C." agreed to the Terms at some point because he purports to disaffirm

14 the Terms now.  Compl. ¶ 33.  Like Ms. Gitre, he would have had to affirmatively acknowledge

15 the Terms through an in-game prompt requiring him to agree to the Terms to play either Words

16 With Friends or Draw Something.  Ferris. Decl. ¶¶ 6-11.  Moreover, the Complaint also implies

17 that "I.C." agreed to the Terms sometime after August 2014, when the mandatory arbitration

18 provision was added—because he is alleged to still be a minor.  Compl. ¶ 6.  Minors under the age

19 of 13 are precluded from playing under the Terms.  Courant Decl., Ex. 3 at 4.  Thus, "I.C." had to

20 have accepted the Terms in the past five years (before age 18), when the mandatory arbitration

21 provision has been in effect.

22         Courts readily enforce the sort of online agreements that Plaintiffs were required to accept

23 in order to play Zynga games.  *See, e.g.*, *Nguyen*, 763 F.3d at-1176-77 (citing with approval a

24 decision enforcing agreement where users were notified of the agreement by text appearing below

25 a "Sign Up" button, which advised users: "By clicking Sign Up, you are indicating that you have

26 read and agree to the Terms of Service"); *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018

27 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) (enforcing agreement where user was required to

28 click an "I agree" box to continue using an online service).  Indeed, the Northern District has

enforced a prior version of a Zynga game's Terms of Service, holding that "clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient." *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011).

That *Zynga* decision stands in good company. *See, e.g.*, *Peter v. DoorDash, Inc.*, No. 19-CV-06098-JST, 2020 WL 1967568, at *4 (N.D. Cal. Apr. 23, 2020) (enforcing agreement where DoorDash required users to tap a "Sign Up" button and notified users that doing so manifested agreement to hyperlinked terms); *Cordas v. Uber Techs., Inc*., 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (upholding modified clickwrap agreement where user "affirmatively assent[ed]" to Uber's terms "by clicking" a sign-in button on a page displaying a notice that user was agreeing to be bound by the linked terms); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (enforcing same Uber arbitration agreement as *Cordas* and collecting cases).

Accordingly, because Plaintiffs validly agreed to the Terms through the in-game prompts they had to accept in order to play Zynga games, and I.C. implicitly admits he agreed to the Terms, those agreements must be enforced.

### B.     The Terms Clearly and Unmistakably Delegate Any Arbitrability Questions to an Arbitrator

To the extent Plaintiffs seek to raise any questions regarding the validity, enforceability or applicability of the arbitration agreement, those questions, too, are for the arbitrator, not this Court—because the parties "clearly and unmistakably" agreed to delegate any such questions of arbitrability. *Brennan*, 796 F.3d at 1128-29 (holding that unconscionability challenge to an arbitration agreement was a question for the arbitrator where the parties "clearly and unmistakably" delegated arbitrability questions); *see also Henry Schein*, 139 S. Ct. at 530. Indeed, there are two separate grounds for finding that the Terms clearly and unmistakably effect such a delegation. Either ground provides a sufficient basis to compel arbitration of any arbitrability questions Plaintiffs might seek to litigate here.

*First*, the arbitration provision in the Terms contains a delegation provision that "is plain on the face of the arbitration agreement and must be observed." *Dekker v. Vivint Solar, Inc.*, No. C 19-07918 WHA, 2020 WL 1429740, at *4 (N.D. Cal. Mar. 24, 2019), *appeal pending*, No. 20-15572 (9th Cir. Apr. 1, 2020). That delegation provision provides in plain English:

> If any party disagrees about whether this Section 15 (or any portion of this Section 15, including without limitation the provisions relating to arbitration, class action waiver, and opting out) can be enforced or whether it applies to the dispute, the parties all agree that the arbitrator will decide that, too.

Courant Decl., Ex. 3 (current) at 14; *see also id.*, Ex. 1 (Aug. 2014) at 12. This language constitutes a clear agreement to delegate to an arbitrator any questions regarding whether the parties' arbitration agreement "can be enforced or whether it applies to the dispute." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) ("Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include … an express agreement to do so.'") (citation omitted); *Fridman v. Uber Techs., Inc.*, No. 18-cv-02815-HSG, 2019 WL 1385887, at **4-5 (N.D. Cal. Mar. 27, 2019) ("[G]ateway challenges to the validity of the Arbitration Provision … must be decided by an arbitrator" where "the terms of the delegation provision clearly and unmistakably delegate [them].").

*Second*, the arbitration provision in the Terms states that the "rules and procedures" of the American Arbitration Association ("AAA") will "control any arbitration," and it provides a hyperlink to AAA's rules and procedures. Courant Decl., Ex. 3 (current) at 14; *see also id.*, Ex. 1 (Aug. 2014) at 13. Those AAA rules provide that an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."[5] This, too, is clear and unmistakable evidence that the parties agreed to delegate to the arbitrator any disputes over arbitrability. *See Brennan*, 796 F.3d at 1130; *Williams v. Eaze*, 417 F. Supp. 3d 1233, 1241 (N.D. Cal. 2019); *Cordas,* 228 F. Supp. 3d at 991-92; *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017).

---

[5] The AAA rules are available at https://www.adr.org/sites/default/files/CommercialRules_Web.pdf

### C.   Plaintiff I.C.'s Disaffirmance Allegation Is for the Arbitrator

To the extent Plaintiff I.C. alleges that he "hereby disaffirms Zynga's Terms of Service and Privacy Policy," Compl. ¶ 33, this is an issue of arbitrability, and as such it is for the arbitrator to decide.  Disaffirmance is a challenge to the enforceability of the "entire contract" as it pertains to the individual plaintiff, not a challenge specific to the delegation provision itself.  *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012).  Therefore, the Ninth Circuit has recognized that, like other "challenges seeking to avoid or rescind a contract," it falls to the arbitrator.  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991) (recognizing that arbitrator properly decides whether a contract is "voidable," including challenges "where one party was an infant, or where the contract was induced by fraud, mistake, or duress") (quoting Restatement (Second) Contracts § 7 comment b (1981)); *see also Dekker*, 2020 WL 1429740, at *4 ("Where the question of arbitrability is delegated, *Rent-A-Center*, *Brennan*, and *Schein* leave no discretion to evaluate whether the general contract principles of a state prevent enforcement of the agreement.").[6]   Accordingly, Plaintiff I.C.'s disaffirmance allegation does not affect the analysis or outcome of this motion.

### D.   If the Court Finds There Is a Genuine Factual Dispute as to Whether Plaintiffs Agreed to Arbitrate, the Court Should Compel Limited Discovery on the Issue

Given that Plaintiffs have declined to date to disclose their position on arbitration or provide any information about the Plaintiffs to help Zynga investigate the relevant facts, Zynga reserves its rights to limited discovery.  Should Plaintiffs attempt to come forward in their opposition with evidence contesting that they agreed to arbitrate, and should the Court further find that the evidence raises a genuine factual dispute as to whether Plaintiffs accepted Zynga's Terms, then Zynga is entitled to discovery on the issue—starting with the email addresses and user IDs associated with Plaintiffs' Zynga accounts, which Plaintiffs have inexplicably refused to provide.

---

[6] Zynga does not concede that Plaintiff I.C. has disaffirmed the Terms.  Plaintiff I.C. has declined to identify himself, and Zynga has therefore not been able to verify his age, *see, e.g.*, *Childs v. Williams*, 757 P.2d 302, 303 (Kan. 1988) (a minor may only disaffirm a contract within a "reasonable time" after reaching majority); Cal. Fam. Code § 6710 (similar), or whether he continues to benefit from the Terms, *see E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900 (S.D. Ill. 2012) (holding that a minor cannot disaffirm a contract if he has already reaped the benefits of the contract by "hav[ing] used and continu[ing] to use" the defendant's services).

1   *See Martinez v. Terminex Int'l Co., L.P.*, No. 15-cv-00619-THE, 2015 WL 12826468, at *3 (N.D.
2   Cal. May 20, 2015).

3         The right to preliminary discovery in these circumstances is clear.  "The FAA provides for
4   discovery … in connection with a motion to compel arbitration … if 'the making of the arbitration
5   agreement or the failure, neglect, or refusal to perform the same be in issue.'"  *Simula, Inc. v.*
6   *Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4).  Where the party opposing
7   arbitration puts the making of the arbitration agreement in issue by disputing whether it was ever
8   formed, courts have allowed "limited discovery regarding the contract formation at issue."
9   *Martinez*, 2015 WL 12826468, at *3; *see also Manning v. Uber Techs. Inc.*, 358 F. Supp. 3d 962,
10  965 (N.D. Cal. 2019) (ordering limited discovery regarding contract formation before ruling on
11  Uber's motion to compel arbitration); *Paxton v. Macy's W. Stores, Inc.*, No.
12  118CV00132LJOSKO, 2018 WL 4297763, at *11 (E.D. Cal. Sept. 7, 2018) (granting Macy's
13  motion to compel arbitration and noting it was proper for it to conduct "discovery about the
14  arbitration agreement" beforehand).

15        For these reasons, and since Plaintiffs have refused without reasonable explanation to
16  disclose the email addresses or user IDs (or name, in the case of "I.C.") associated with their Zynga
17  accounts, Turner Decl. ¶¶ 3-7, Zynga reserves the right to request discovery of this and any other
18  information needed to address any factual contentions raised by Plaintiffs in their opposition.

19  **V.     CONCLUSION**

20        For all the reasons set forth above, the Court should grant Zynga's Motion to Compel
21  Arbitration and stay judicial proceedings in this matter until the arbitrator resolves all issues
22  properly delegated by the Terms.  Alternatively, the Court should compel limited discovery
23  regarding contract formation.

24

25

26

27

28

1

DATED:  May 8, 2020                    LATHAM & WATKINS LLP

2

*/s/ Elizabeth L. Deeley*
Elizabeth L. Deeley (CA Bar No. 230798)

3

*elizabeth.deeley@lw.com*
505 Montgomery Street, Suite 2000

4

San Francisco, California 94111-6538
Telephone:  +1.415.391.0600

5

Facsimile:  +1.415.395.8095

6

Susan E. Engel (*pro hac vice*)

7

*susan.engel@lw.com*
555 Eleventh Street, N.W., Suite 1000

8

Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

9

Facsimile: +1.202.637.2201

10

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*

11

885 Third Avenue
New York, NY 10022-4834

12

Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

13

14

Attorneys for Defendant *Zynga Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28