LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  *elizabeth.deeley@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Susan E. Engel (*pro hac vice*)
  *susan.engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

Serrin Turner (*pro hac vice*)
  *serrin.turner@lw.com*
885 Third Avenue
New York, NY 10022-4834
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

Attorneys for Defendant *Zynga Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| I.C., a minor, by and through his natural parent, NASIM CHAUDHRI, AMY GITRE, CAROL JOHNSON, LISA THOMAS, JOSEPH MARTINEZ IV, DANIEL PETRO, and CHRISTOPHER ROSIAK, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>ZYNGA INC.,<br><br>          Defendant. | Case No.: 4:20-cv-01539-YGR<br><br>**DEFENDANT ZYNGA INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><br>Hearing:  July 27, 2021<br>Time:     2:00 p.m.<br>Location: Courtroom 1 – 4th Floor<br>Judge:   Hon. Yvonne Gonzalez Rogers |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 27, 2021 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 1, 4th Floor, located at 1301 Clay Street, Oakland, California 94612 Defendant Zynga Inc. ("Zynga") through its undersigned counsel, will, and hereby does, move to dismiss Plaintiffs I.C., a minor by and through his natural parent Nasim Chaudhri, Carol Johnson, Daniel Petro and Christopher Rosiak's ("Plaintiffs")[1] Consolidated Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6). The Complaint should be dismissed because (1) Plaintiffs lacks Article III standing to bring their claims and (2) each of their claims is fatally flawed on the merits.

Zynga's Motion to Dismiss (the "Motion") is based on this Notice, the supporting Memorandum of Points and Authorities ("Memorandum"), the Declarations of Jessup Ferris and Serrin Turner filed concurrently herewith, the accompanying Request for Judicial Notice, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

## **ISSUE TO BE DECIDED**

Whether the Court should dismiss Plaintiffs' Complaint because (1) Plaintiffs lack Article III standing to bring their claims and (2) each of their claims is fatally flawed on the merits.

DATED: April 21, 2021                    LATHAM & WATKINS LLP

                                         */s/ Elizabeth L. Deeley*
                                         Elizabeth L. Deeley (CA Bar No. 230798)
                                         *elizabeth.deeley@lw.com*
                                         505 Montgomery Street, Suite 2000
                                         San Francisco, California 94111-6538
                                         Telephone: +1.415.391.0600

---

[1] The other three named plaintiffs in this action—Amy Gitre, Lisa Thomas, and Joseph Martinez IV—are subject to a mandatory and enforceable arbitration agreement and Zynga has contemporaneously moved to compel arbitration of their claims. Zynga reserves the right to file a Rule 12(b) motion with respect to those plaintiffs at a later time if the Court declines to compel arbitration. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that a prior motion to dismiss or stay based on grounds other than Rule 12 did not bar a later Rule 12(b) motion).

1    Facsimile:  +1.415.395.8095

2    Susan E. Engel (*pro hac vice* )
         *susan.engel@lw.com*
3    555 Eleventh Street, N.W., Suite 1000
     Washington, D.C. 20004-1304
4    Telephone: +1.202.637.2200
     Facsimile: +1.202.637.2201

5

6    Serrin Turner (*pro hac vice* )
         *serrin.turner@lw.com*
     885 Third Avenue
7    New York, NY 10022-4834
     Telephone: +1.212.906.1200
8    Facsimile: +1.212.751.4864

9
     Attorneys for Defendant *Zynga Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

    A.   Plaintiffs Played Zynga's Games.......................................................... 2

    B.   Zynga Does Not Require Players to Provide Their "Personal Identifying Information".......................................................................... 2

    C.   The Attack at Issue Affected Only Limited Information Relating to Plaintiffs................................................................................................ 3

    D.   Plaintiffs' Complaint ............................................................................. 4

III.  LEGAL STANDARDS ........................................................................................... 4

IV.   PLAINTIFFS LACK STANDING FOR THEIR CLAIMS ................................... 5

    A.   Plaintiffs Have Not Alleged and Cannot Show Actual or Imminent Injury.................................................................................... 5

    B.   Plaintiffs Additionally Have Not Alleged and Cannot Show Any Immediate Threat of Repeated Injury Sufficient to Seek Injunctive or Declaratory Relief.............................................................................. 10

V.    THE LIMITATION OF LIABILITY CLAUSE IN ZYNGA'S TERMS BARS RECOVERY ON NEARLY ALL OF PLAINTIFFS' COMMON-LAW CLAIMS ....................................................................................................... 11

    A.   Zynga's Terms of Service Govern Plaintiffs' Relationship with Zynga .................................................................................................... 11

    B.   The Terms Contain a Broad Limitation of Liability.............................. 12

VI.   PLAINTIFFS' NEGLIGENCE AND CONTRACT-BASED CLAIMS FAIL.......................................................................................................................... 15

    A.   Plaintiffs Have Failed To Plausibly Allege Damages Cognizable Under Negligence or Contract Law ....................................................... 15

    B.   Plaintiffs Fail To State a Negligence Claim ......................................... 17

    C.   Plaintiffs Fail to State a Negligent Misrepresentation Claim ............... 21

    D.   Plaintiffs Fail to State a Breach of Contract Claim............................... 22

    E.   Plaintiffs Fail to State an Implied Contract Claim................................ 23

VII.  PLAINTIFFS' OTHER COMMON-LAW CLAIMS FAIL.................................... 23

    A.   Plaintiffs Fail to State an Unjust Enrichment Claim............................. 24

B.      Plaintiffs Fail to State a Breach of Confidence Claim.........................24

C.      Plaintiffs Fail to State an Intrusion Upon Seclusion Claim................................24

VIII.   PLAINTIFFS FAIL TO STATE CALIFORNIA STATUTORY CLAIMS...................25

A.      Plaintiffs Lack Statutory Standing Under The UCL, FAL, And
        CLRA......................................................................................................26

B.      Plaintiffs Fail to State a Claim Under Any UCL Prong......................................28

C.      Plaintiffs Fail to State a Claim Under the FAL or CLRA................................30

IX.     PLAINTIFFS FAIL TO STATE CLAIMS UNDER OTHER STATES'
        STATUTES...............................................................................................30

A.      Plaintiffs' Non-California Claims Are Barred by the Choice-of-
        Law Provision in Zynga's Terms.......................................................31

B.      All of the Non-California Statutory Claims Are Meritless in Any
        Event........................................................................................................31

X.      PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF ...............................33

XI.     CONCLUSION............................................................................................35

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ZYNGA INC.'S MOTION TO DISMISS
CASE NO. 4:20-CV-01539-YGR

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Adkins v. Facebook, Inc.*,
  No. C 18-05982 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ....................................14

5

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..............................................................................9

6

*Aguilera v. Pirelli Armstrong Tire Corp.*,
  223 F.3d 1010 (9th Cir. 2000) .........................................................................................15

7

8

*Amburgy v. Express Scripts, Inc.*,
  671 F. Supp. 2d 1046 (E.D. Mo. 2009)..............................................................................32

9

*Antman v. Uber Techs., Inc.*,
  No. 15-cv-01175-LB, 2018 WL 2151231 (N.D. Cal. May 10, 2018) ....................................6, 9

10

11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................5

12

*Astrium S.A.S. v. TRW, Inc.*,
  197 F. App'x 575 (9th Cir. 2006) .....................................................................................21

13

14

*Attias v. CareFirst, Inc.*,
  365 F. Supp. 3d 1 (D.D.C. 2019) .....................................................................................19

15

*Baba v. Hewlett-Packard Co.*,
  No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) .........................................29

16

17

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................................................7, 14, 27

18

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ...........................................................................................10

19

20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................5

21

*Berkla v. Corel Corp.*,
  302 F.3d 909 (9th Cir. 2002) ......................................................................................23, 24

22

23

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ............................................................................................6

24

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
  241 F. Supp. 3d 1084 (C.D. Cal. 2017) ............................................................................18

25

26

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
  685 F. Supp. 2d 1094 (E.D. Cal. 2010)..............................................................................28

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

ZYNGA INC.'S MOTION TO DISMISS
CASE NO. 4:20-CV-01539-YGR

*Bray v. Gamestop Corp.*,
No. 1:17-CV-1365, 2018 WL 11226516 (D. Del. Mar. 16, 2018) (Indiana) .........................31

*In re Brinker Data Incident Litig.*,
No. 3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ...........................24

*Burgess v. Eforce Media, Inc.*,
No. 1:07-cv-231, 2007 WL 3355369 (W.D.N.C. Nov. 9, 2007) .........................................9

*Castillo v. Seagate Tech., LLC*,
No. 16-cv-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016)..............................18, 19

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................................................................10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)......................................................................................5, 9

*Clemens v. ExecuPharm, Inc.*,
No. 20-3383, Memorandum and Order, Dkt. No. 27 (E.D. Pa. Feb. 25, 2021)........................8

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) ............................................................................19

*Crawford v. Sony Interactive Entertainment LLC*,
No. 3:20-cv-01732-JD, Order re Arbitration, Dkt. No. 25 (N.D. Cal. Mar. 30,
2021) ......................................................................................................15

*Damner v. Facebook Inc.*,
No. 20-CV-05177-JCS, 2020 WL 7862706 (N.D. Cal. Dec. 31, 2020)................................25

*Darnaa, LLC v. Google Inc.*,
756 F. App'x 674 (9th Cir. 2018) ........................................................................14

*Das v. Bank of Am., N.A.*,
186 Cal. App. 4th 727 (2010) ............................................................................19

*Davidson v. Apple, Inc.*,
No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017)................................27

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ...........................................................................29

*Dent v. NFL*,
902 F.3d 1109 (9th Cir. 2018) ...........................................................................18

*Doc's Dream, LLC v. Delores Press, Inc.*,
No. CV 15-2857-R, 2015 WL 12832063 (C.D. Cal. July 6, 2015) .......................................35

*Doe v. Match.com*,
789 F. Supp. 2d 1197 (C.D. Cal. 2011) ..................................................................11

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
No. 3:16-cv-00014-GPCBLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016).............10, 18, 27

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .................................................................................................34

*Ebner v. Fresh, Inc.*,
   838 F. 3d 958 (9th Cir. 2016) ...............................................................................30

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ...............................................................29

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
   2019 WL 4261048 (N.D. Cal. Sept. 9, 2019) ......................................................26

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) .....................................................................22, 24, 25

*In re Facebook, Inc. Sec. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019) .................................................................12

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) .....................................................26, 27, 30

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) .................................................................22

*Flores v. United Parcel Serv., Inc.*,
   768 F. App'x 677 (9th Cir. 2019) .........................................................................22

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
   209 Cal. App. 4th 1118 (2012) ............................................................................14

*Fox v. Iowa Health Sys.*,
   399 F. Supp. 3d 780 (W.D. Wis. 2019) ...............................................................32

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) .................................................................12

*Garcia v. Sony Comp. Entm't Am., LLC*,
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) ...............................................................29

*Gerstle v. Am. Honda Motor Co., Inc.*,
   No. 16-CV-04384-JST, 2017 WL 2797810 (N.D. Cal. June 28, 2017) ...............15

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...............................................................................5

*Giroux v. Essex Prop. Trust, Inc.*,
   No. 16-cv-01722-HSG, 2017 WL 1549477 (N.D. Cal. May 1, 2017) ...................5

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................17

*In re Google Inc.*,
   No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............15

*In re Google, Inc. Privacy Pol'y Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................................................................25

*Greystone Homes, Inc. v. Midtec, Inc.*,
  168 Cal. App. 4th 1194 (2008) .............................................................................19

*Grigsby v. Valve Corp.*,
  No. C12-0553JLR, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012) ...................16

*Grodzitsky v. Am. Honda Motor Co.*,
  No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........31

*Gustafson v. Wells Fargo Home Mortg.*,
  No. 12-04875 RS, 2012 WL 12903739 (N.D. Cal. Dec. 28, 2012) .......................33

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
  No. CV1803019SJOJPRX, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ...............18

*Hannan v. Bos. Sci. Corp.*,
  No. 19-CV-08453-PJH, 2020 WL 2128841 (N.D. Cal. May 5, 2020) ..............16, 21

*Hartless v. Clorox Co.*,
  No. CIV. 06CV2705JAHCAB, 2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ........28

*Hassell v. Uber Techs., Inc.*,
  20-cv-04062-PJH, 2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) ..........................34

*Haywood v. Massage Envy Fran.*,
  LLC, 887 F.3d 329 (7th Cir. 2018) ........................................................................31

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ...............................................................................26

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) .....................................................................28, 29, 30

*Holl v. United Parcel Serv., Inc.*,
  No. 16-CV-05856-HSG, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) ............15

*Holly v. Alta Newport Hosp., Inc.*,
  No. 219 CV 07496, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) .......................17

*Huynh v. Quora, Inc.*,
  No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ....17, 24, 26, 27

*Huynh v. Quora, Inc.*,
  No. 5:18-CV-07597-BLF, 2020 WL 7495097 (N.D. Cal. Dec. 21, 2020) ............34

*In re iPhone App. Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) .....................................................................27

*Jinkins v. Temecula Towne Ctr. Assocs., LLC*,
  No. EDCV182281PSGKKX, 2019 WL 1652086 (C.D. Cal. Feb. 15, 2019) .........12

*K.A. v. Children's Mercy Hosp.,*
  No. 4:18-00514-CV-RK, 2019 WL 2144815 (W.D. Mo. May 16, 2019) ..............................31

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.,*
  315 F. App'x 603 (9th Cir. 2008) .....................................................................................18

*Kelley v. Countrywide Home Loans,*
  No. CVF-09-1148 LJO DLB, 2009 WL 3489422 (E.D. Cal. Oct. 26, 2009).........................33

*Kerrigan v. ViSalus, Inc.,*
  2015 WL 3679266 (E.D. Mich. June 12, 2015)...................................................................30

*Kluin v. Am. Suzuki Motor Corp.,*
  274 Kan. 888 (2002) ........................................................................................................32

*Krottner v. Starbucks Corp.,*
  406 F. App'x 129 (9th Cir. 2010) .....................................................................................16

*Krottner v. Starbucks Corp.,*
  628 F.3d 1139 (9th Cir. 2010) ...........................................................................................6

*Kuhns v. Scottrade, Inc.,*
  868 F.3d 711 (8th Cir. 2017) ...........................................................................................20

*Kwikset Corp. v. Super. Ct.,*
  51 Cal. 4th 310 (2011) .....................................................................................................26

*Lectrodryer v. SeoulBank,*
  77 Cal. App. 4th 723 (2000) ............................................................................................24

*Lehman v. Shroyer,*
  721 N.E.2d 365 (Ind. Ct. App. 1999)................................................................................32

*Leite v. Crane Co.,*
  749 F.3d 1117 (9th Cir. 2014) ...........................................................................................4

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.,*
  34 Cal. 4th 960 (2004) .....................................................................................................13

*Lewis v. YouTube, LLC,*
  244 Cal. App. 4th 118 (2015) ..........................................................................................14

*Linde, LLC v. Valley Protein, LLC,*
  1:16-cv-00527-DAD-EPG, 2019 WL 3035551 (E.D. Cal. July 11, 2019)............................21

*Lopez v. Nissan N. Am., Inc.,*
  201 Cal. App. 4th 572 (2011) ..........................................................................................21

*Lozano v. AT&T Wireless Servs., Inc.,*
  504 F.3d 718 (9th Cir. 2007) ...........................................................................................29

*In re MacBook Keyboard Litig.,*
  No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020).........................34, 35

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

ZYNGA INC.'S MOTION TO DISMISS
CASE NO. 4:20-CV-01539-YGR

1  *Maxwell v. Unilever United States, Inc.*,
2      No. 5:12-CV-01736-EJD, 2014 WL 4275712 (N.D. Cal. Aug. 28, 2014) ...............................27

   *Mayes v. Bryan*,
3      139 Cal. App. 4th 1075 (2006) ................................................................................................20

4  *Mazza v. Am. Honda Motor Co.*,
      666 F.3d 581 (9th Cir. 2012) ...................................................................................................26
5
   *McCoy v. Alphabet, Inc.*,
6      No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................................25

7  *McNeil v. Best Buy Co., Inc.*,
      4:13CV1742 JCH, 2014 WL 1316935 (E.D. Mo. Apr. 2, 2014) .............................................33
8
   *Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*,
9      No. 08cv1595 BEN (BGS), 2010 WL 11432458 (S.D. Cal. Dec. 2, 2010) ...........................24

10 *Mirkin v. Wasserman*,
      5 Cal. 4th 1082 (1993) ............................................................................................................22
11
   *Monsanto Co. v. Geerston Seed Farms*,
12     561 U.S. 139 (2010).................................................................................................................5

13 *Moore v. Mars Petcare US, Inc.*,
      966 F.3d 1007 (9th Cir. 2020) .................................................................................................27
14
   *Mountain View Surgical Ctr. v. Cigna Health Corp.*,
15     No. CV 13-08083 DDP AGRx, 2015 WL 5456592 (C.D. Cal. Sept. 17, 2015) ...................23

16 *N. Star Gas Co. v. Pac. Gas & Elec. Co.*,
      No. 15-CV-02575-HSG, 2016 WL 5358590 (N.D. Cal. Sept. 26, 2016)...............................14
17
   *In re Nexus 6P Prods. Liability Litig.*,
18     293 F. Supp. 3d 888 (N.D. Cal. 2018) ....................................................................................29

19 *O'Connor v. BMW of N.A., LLC*,
      18-CV-03190-CMA-STV, 2020 WL 2309617 (D. Colo. Jan. 7, 2020) ..................................30
20
   *O'Shea v. Littleton*,
21     414 U.S. 488 (1974)................................................................................................................10

22 *Palomino v. Facebook, Inc.*,
      No. 16-CV-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017)........................................31
23
   *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
24     96 F.3d 1151 (9th Cir. 1996) ...................................................................................................24

25 *Parrino v. FHP, Inc.*,
      146 F.3d 699 (9th Cir. 1998) ...................................................................................................12
26
   *Patterson v. Bayer Healthcare Pharm., Inc.*,
27     2015 WL 778997 (E.D. Cal. Feb. 24, 2015)...........................................................................21

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

ZYNGA INC.'S MOTION TO DISMISS
CASE NO. 4:20-CV-01539-YGR

*Pruchnicki v. Envision Health Corp.*,
   Case No. 20-15460, slip op. (9th Cir. Apr. 21, 2021)...................................................16, 17, 27

*Pruchnicki v. Envision Healthcare Corp.*,
   439 F. Supp. 3d 1226 (D. Nev. 2020) ..........................................................................16, 17, 27

*Puentes v. Wells Fargo Home Mortg., Inc.*,
   160 Cal. App. 4th 638 (2008) ........................................................................................28

*Quiroz v. Seventh Ave. Ctr.*,
   140 Cal. App. 4th 1256 (2006) ......................................................................................18

*R.A. v. Epic Games, Inc.*,
   No. CV 19-1488-GW-EX, 2019 WL 6792801 (C.D. Cal. July 30, 2019) ......................14

*Rahman v. Marriott Int'l, Inc.*,
   No. 8:20-cv-00654, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021).................................7

*Ramirez v. Nelson*,
   44 Cal. 4th 908 (2008) ..................................................................................................20

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ........................................................................................26

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ........................................................................................9

*Rent-A-Center, Inc. v. Canyon TV and Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ........................................................................................34

*Rivera v. Freeman*,
   469 F.2d 1159 (9th Cir. 1972) ......................................................................................35

*Robinson v. Food Service of Belton, Inc.*,
   415 F. Supp. 2d 1227 (D. Kan. 2005) ..........................................................................15

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) (Massachusetts) .............................................31

*Ruiz v. Gap, Inc.*,
   622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd* 380 Fed. App'x 689 (9th
   Cir. 2010) .....................................................................................................................16, 25

*S. California Gas Leak Cases*,
   7 Cal. 5th 391 (2019) ....................................................................................................19

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ......................................................................................4

*In Re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
   No. 16-CV-06391-BLF, 2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) .......................30

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
   No. 05 C 2623, 2009 WL 3460218 (N.D. Ill. Oct. 20, 2009)........................................32

*Sharma v. Volkswagen AG*,
   No. 20-cv-02394-JST, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021)........................................35

*Shepard v. DineEquity, Inc.*,
   No. CIV.A. 08-2416-KHV, 2009 WL 8518288 (D. Kan. Sept. 25, 2009)..............................31

*Silk v. Metro. Life Ins. Co.*,
   477 F. Supp. 2d 1088 (C.D. Cal. 2007), *aff'd*, 310 F. App'x 138
   (9th Cir. 2009)........................................................................................................................12

*Sion v. SunRun, Inc.*,
   No. 16-cv-05834, 2017 WL 952953 (N.D. Cal. Mar. 13, 2017) .............................................18

*Smith v. LG Elecs. U.S.A., Inc.*,
   No. C 13-4361, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014)................................................28

*In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*,
   No. 1:17-MD-2807, 2020 WL 3577341 (N.D. Ohio July 1, 2020) ........................................20

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .................................................................................................34

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)....................................................................16, 17, 18, 28

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)...............................................................................18, 19

*In re Sony PS3 Other OS Litig.*,
   551 F. App'x 916 (9th Cir. 2014) ......................................................................................24, 35

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..............................................................................................................5

*Sponchiado v. Apple Inc.*,
   No. 18-CV-07533-HSG, 2019 WL 6117482 (N.D. Cal. Nov. 18, 2019)...............................33

*Springmeyer, et al. v. Marriott Int'l, Inc.*,
   No. 20-CV-867-PWG, 2021 WL 809894 (D. Md. Mar. 3, 2021).........................................20

*Stasi v. Inmediata Health Grp. Corp.*,
   No. 19-CV-2353, 2020 WL 2126317 (S.D. Cal. May 5, 2020)................................................7

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) .................................................................................28

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp.
   v. Behrend*, 569 U.S. 27 (2013).............................................................................................26

*Stein v. Sprint Corp.*,
   22 F. Supp. 2d 1210 (D. Kan. 1998) ......................................................................................32

*In re SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) .................................................................................................19

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..................................................................................................5

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
  83 F. Supp. 3d 855 (N.D. Cal. 2015) ...............................................................16, 23

*T&M Farms v. CNH Indus. Am., LLC*,
  488 F. Supp. 3d 756 (E.D. Wis. 2020)..............................................................31

*Teresa Adams v. Cole Haan, LLC*,
  20-cv-00913-JVS, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)..........................34

*Terpin v. AT&T Mobility, LLC*,
  399 F. Supp. 3d 1035 (C.D. Cal. 2019) ...........................................................23

*Top Trade v. Grocery Outlet*,
  No. 217CV08467SVWMRW, 2018 WL 6038297 (C.D. Cal. May 9, 2018)..........................19

*Tsao v. Captiva MVP Restaurant Partners, LLC*,
  986 F.3d 1332 (11th Cir. 2021) ......................................................................6

*U.S. Ecology, Inc. v. State*,
  129 Cal. App. 4th 887 (2005) ........................................................................23

*In re Uber Technologies, Inc.*,
  2019 WL 6522843 (C.D. Cal. 2019)...............................................................7, 9

*United States v. Ogden*,
  No. 20-CV-01691-DMR, 2021 WL 858467 (N.D. Cal. Mar. 8, 2021) ..................35

*Updike v. Multnomah Cty.*,
  870 F.3d 939 (9th Cir. 2017) .........................................................................10

*Veridian Credit Union v. Eddie Bauer, LLC*,
  295 F. Supp. 3d 1140 (W.D. Wash. 2017)......................................................19, 20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .......................................................................31

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ........................................................................35

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020).............................................................27

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ...........................................................31

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) .........................................................................5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)..........................13, 27, 28

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ........................................................................22

*Yunker v. Pandora Media, Inc.*,
   No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...............................30

*Zapata Fonseca v. Goya Foods, Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ....................................................................35

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ..............................................................................6, 8

## STATUTES

15 U.S.C.
   § 45..........................................................................................................................19
   § 45(a)(1) ...............................................................................................................20
   § 45(n) ....................................................................................................................28

Cal. Civ. Code
   § 1668.....................................................................................................................13
   § 1761(d) ...............................................................................................................30
   § 1798.81.5(a)(1) ..............................................................................................20, 28
   § 1798.81.5(b) .......................................................................................................28
   § 1798.82 ...............................................................................................................28

Cal. Fam. Code § 6710 ..................................................................................................14

Customer Records Act (CRA) .......................................................................................28

Federal Trade Commission Act (FTC Act) .........................................................19, 20, 28

Ind. Code
   § 24-5-0.5-2(8) .....................................................................................................32
   § 24-5-0.5-4(a) ......................................................................................................32

Iowa Code
   § 714.16..................................................................................................................32
   § 714.16(7) .............................................................................................................32
   § 715C.1(11) .........................................................................................................33

Iowa Consumer Fraud Act ............................................................................................32

Kan. Stat. Ann.
   § 38-102 .................................................................................................................14
   § 50-7a01(g) ..........................................................................................................33
   § 50-624(c) ............................................................................................................32
   § 50-626(a) ............................................................................................................33
   § 50-634 .................................................................................................................32
   § 50-634(b) ............................................................................................................32

Missouri Merchandising Practices Act ...........................................................................31

Mo. Rev. Stat. § 407.1500 .............................................................................................33

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

xii

ZYNGA INC.'S MOTION TO DISMISS
CASE NO. 4:20-CV-01539-YGR

**RULES**

Fed. R. Civ. P.
    9(b)...........................................................................................................29, 30, 31
    12(b)(1) ...................................................................................................4
    12(b)(6) ...................................................................................................5
    12(d)........................................................................................................12

**CONSTITUTIONAL PROVISIONS**

U.S. CONST., art. III ........................................................................... *passim*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

xiii

ZYNGA INC.'S MOTION TO DISMISS
CASE NO. 4:20-CV-01539-YGR

## I.      INTRODUCTION

Plaintiffs bring this suit against Zynga over a September 2019 criminal hacking attack on Zynga's systems (the "Attack") that has not caused them any harm, based on causes of action they have not adequately pled, for purported damages that are barred under terms of service they necessarily accepted.  The Complaint should be dismissed because (1) Plaintiffs lack Article III standing and (2) each of their claims is fatally flawed on the merits.

**Plaintiffs lack Article III standing.**  Plaintiffs were not required to provide their "personal information" to play Zynga's free games.  The only information of theirs affected by the Attack is: an email address and screen name for each Plaintiff, as well as a Zynga password for Plaintiffs I.C. and Johnson, and an (unverified) birthdate and phone number for Johnson.  No credit card information or sensitive financial identifiers such as social security numbers were affected, for Plaintiffs or any other player; Zynga does not even collect such information.

Plaintiffs fail to explain how they have been harmed by the data breach at all.  They vaguely allege a risk of identity theft, but no information was stolen in the Attack that could be used to open or take over lines of credit in their names.  Plaintiffs cite the risk of "credential stuffing"—where cybercriminals use stolen usernames and passwords to see if they work on e-commerce sites; but two of the Plaintiffs did not even have Zynga passwords, and the other two do not even allege that they use their old Zynga password on any e-commerce site (which they could readily change even if they did).  Plaintiffs speculate that they might receive "phishing emails," but in that respect, they are no different from any other email user.

Tellingly, even though their Consolidated Class Action Complaint was filed more than a year after the Attack occurred, Plaintiffs do not allege a single instance of identity theft, credential stuffing, or phishing scam that they or *anyone* else fell victim to as a result.  Plaintiffs' unfounded speculation about these hypothetical scenarios does not come close to establishing Article III standing, and the Complaint should be dismissed on this ground alone.

**Plaintiffs' claims fail on the merits.**  Plaintiffs have packed the Complaint with every cause of action they can think of—27 in total—but every one fails to state a claim.  The broad

limitation of liability clause in Zynga's terms of service precludes all of Plaintiffs' non-statutory claims, other than claims based on fraud or willful misconduct, neither of which Plaintiffs adequately (or can plausibly) allege.  Plaintiffs' negligence and contract-based claims all fail because Plaintiffs have not alleged damages cognizable under negligence or contract law. Plaintiffs' negligence-based claims are additionally barred by the economic loss rule, and their contract-based claims also fail to specify any contractual obligation that was breached. Plaintiffs' California statutory claims fail to plead economic injury or actual reliance, and omit critical substantive elements of each claim; and their non-California statutory claims are barred by the choice-of-law provision in the terms of service, and are meritless in any event.  Lastly, Plaintiffs do not satisfy the requirements for obtaining equitable relief in federal court, and thus all of their claims are separately subject to dismissal to the extent they request equitable relief.

For all these reasons, as detailed below, the case should be dismissed in its entirety.

## II.   BACKGROUND

### A.   Plaintiffs Played Zynga's Games

Zynga operates social games that can be played with friends on mobile devices or on Facebook.  Compl. ¶ 26; Declaration of Jessup Ferris ("Ferris Decl.") ¶ 3.  One suite of Zynga games is known as "Games with Friends," which included "Words with Friends" (a twist on the classic Scrabble game) and "Hanging with Friends" (a twist on the classic Hangman game). Ferris Decl. ¶ 5.  Another Zynga game, not in the Games with Friends suite, is "Draw Something" (a twist on the classic Pictionary game).  *Id.*

Plaintiffs allege they played various Zynga games, including the above games, at various times over the last decade, from December 2011 through 2018 (the "Relevant Time Period"). Compl. ¶¶ 8, 13, 19, 21.  Based on Zynga's records, each Plaintiff played at least one Games With Friends game; and Johnson and Petro also played Draw Something.  Ferris Decl. ¶ 14.

### B.   Zynga Does Not Require Players to Provide Their "Personal Identifying Information"

While Plaintiffs allege throughout the Complaint that Zynga players are required to provide their "personally identifying information" to Zynga in exchange for the ability to play,

the information required to create an account during the Relevant Time Period was in fact minimal (as it is today).  As to Games With Friends or Draw Something, a player could create an account *either* using an email address, *or* by logging in through Facebook, in which case the player would not have to provide any login information to Zynga at all.[2]  *Id.* ¶ 7(a)-(c).  For players who opted to log in with an email address, they *could* create a password if they wanted to access their account from multiple devices, but they were also able to create an account without a password, as many chose to do.  *Id.* ¶ 7(b).  Players also were required to have a screen name, which is how they appear to other players; it could be any unique text of their choosing.  *Id.* ¶ 7(d).  No further information was required to play.  At certain times during the Relevant Time Period, Zynga collected certain additional information from players, if provided by the player— including phone number and date of birth—but only a small percentage of players chose to provide the information, which was not verified by Zynga.  *Id.* ¶ 8.

The games at issue were available to play for free.  *Id.* ¶ 10.  Players had the option of making in-game purchases of "coins" that can be used for game features (such as extra lives), but Zynga has long used third-party payment processors to collect payment information.  *Id.*; *see also* Ex. D (2018 Privacy Policy) at 4.[3]  Zynga does not collect or store such information itself and did not possess any such information at the time of the Attack.  Ferris Decl. ¶¶ 10, 21.

## C.    The Attack at Issue Affected Only Limited Information Relating to Plaintiffs

On September 12, 2019, Zynga announced that it had discovered a recent security incident (the "Attack") in which criminal hackers had illegally accessed player account information for certain Zynga games.  *Id.* ¶ 11.  The information accessed included certain data tables from a Games With Friends database and certain data tables from a Draw Something

---

[2] Plaintiffs incorrectly claim that users who opt to log in to a Zynga account through Facebook must provide their Facebook username and password to Zynga.  Compl. ¶ 31  In fact, the user is routed to Facebook's single sign-on service for authentication.  Ferris Decl. ¶ 7(c).  Zynga does not collect any Facebook login information from users.  *Id.* ¶ 7(c) & n.3.  Zynga does obtain Facebook ID numbers for users who log in through Facebook's single sign-on service, but this is simply an identifier for their Facebook account; it cannot be used to log in to the Facebook account.  *Id.*

[3] All Exhibit ("Ex.") references herein are to the exhibits attached to the concurrently filed Declaration of Serrin Turner in Support of Zynga's Motion to Dismiss.

database (the "Subject Data Tables").  *Id.* ¶ 12.    Only limited information for Plaintiffs was included in the Subject Data Tables:

- For Petro:      email address and screen name
- For Rosiak:     email address and screen name
- For I.C.:       email address, screen name, Games With Friends password (hashed)
- For Johnson:    email address, screen name, Games With Friends password (hashed) and Draw Something password (plaintext), date of birth, phone number[4]

*Id.* ¶ 16.  The vast majority of passwords in the Subject Data Tables were "hashed"—*i.e.*, cryptographically scrambled, rather than stored in plaintext—although a small number of older Draw Something passwords, including Johnson's, were stored in plaintext.  *Id.* ¶ 9.  As a precaution, Zynga reset the passwords of all players in the Subject Data Tables following the Attack to protect the accounts from any unauthorized login.  *Id.* ¶ 18.

### D.    Plaintiffs' Complaint

The Complaint—filed nearly a year and a half after the Attack—alleges that, as a result of the Attack, "Zynga's customers have been exposed to credit and identity theft, '[credential] stuffing,' phishing scams, and other illegal and fraudulent conduct perpetrated by the criminal actors who have come into possession of the stolen PII."  Compl. ¶ 5.  Yet, it fails to identify any specific instance of harm befalling any Zynga player—let alone Plaintiffs—as a result of the Attack.  *Id.* ¶ 78.  The Complaint seeks unspecified damages as well as injunctive and declaratory relief under 27 common-law and statutory theories.

## III.    LEGAL STANDARDS

**Rule 12(b)(1).**  A defendant may challenge Article III standing not only based on the face of a plaintiff's allegations, *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014), but also by introducing affidavits or other evidence challenging jurisdictional facts, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In response to a factual attack, the opposing party

---

[4] The Subject Data Tables also included certain information not provided by the player, but generated as part of their game use, including: the player's Zynga ID (a unique number used to identify a player on Zynga's internal systems); information about the player's account use (such as date/time when the account was created or last logged into, and IP address the last login was from); and password reset tokens, which are codes that can be used to reset passwords when a password reset is requested by the user, but which are valid only for a limited time.  Plaintiff Johnson had such tokens stored in her accounts, but they expired long before the Attack.  *Id.* ¶ 20.

1  "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject

2  matter jurisdiction."  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citation omitted).

3      **Rule 12(b)(6).**  A complaint must plead "sufficient factual matter, accepted as true, to

4  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court need not "accept as

6  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

7  inferences."  *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (citation

8  omitted).  Taking only "well-pleaded factual allegations" as true, a court "determine[s] whether

9  they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

10  ## IV.   PLAINTIFFS LACK STANDING FOR THEIR CLAIMS

11      "To establish Article III standing, an injury must be 'concrete, particularized, and actual

12  or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"

13  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geerston*

14  *Seed Farms*, 561 U.S. 139, 149 (2010)).  "For an injury to be 'particularized,' it 'must affect the

15  plaintiff in a personal and individual way.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548

16  (2016) (citation omitted).  To be "concrete," the injury "must actually exist" and be "'real,' and

17  not 'abstract.'"  *Id.* at 1548 (citation omitted).  Allegations of future harm can establish standing

18  only if the harm is "'*certainly* impending' or there is a '*substantial* risk that the harm will

19  occur.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (emphasis added)

20  (citation omitted).   Speculative "allegations of *possible* future injury are not sufficient."

21  *Clapper*, 568 U.S. at 409 (emphasis added).  Plaintiffs fail to meet any of these standards.

22      ### A.   Plaintiffs Have Not Alleged and Cannot Show Actual or Imminent Injury

23      Plaintiffs allege in conclusory fashion that "Zynga's customers have been exposed to

24  credit and identity theft, '[credential] stuffing,' phishing scams, and other illegal and fraudulent

25  conduct."  Compl. ¶ 5.  But they do not "specify which of these [injuries], if any, Plaintiff[s]

26  ha[ve] personally incurred" as a result of the data breach.  *Giroux v. Essex Prop. Trust, Inc.*, No.

27  16-cv-01722-HSG, 2017 WL 1549477, at *2 (N.D. Cal. May 1, 2017).  Generalized allegations

28  about injuries purportedly suffered by "Plaintiffs and the Class," Compl. ¶ 87, cannot substitute

1    for specific allegations that Plaintiffs *themselves* suffered any harm, and the Complaint should be

2    dismissed for this reason alone.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-961 (9th Cir.

3    2009) (no standing where plaintiffs' injury was not "particularized *as to themselves*").

4           Moreover, Plaintiffs do not allege that any of the harms they recite have actually

5    happened.  Even though it has now been more than a year and a half since the Attack, the

6    Complaint does not provide a single concrete instance in which *anyone*—let alone Plaintiffs—

7    actually experienced "credit and identity theft," "credential stuffing," a "phishing scam," or other

8    "fraudulent conduct" as a result of the Attack.  Plaintiffs instead appear to be relying solely on

9    the purported *risk* of such harms occurring in the future.  But the lack of actual harm is

10   problematic for Plaintiffs because it shows the lack of any actual risk.  "Generally speaking, the

11   cases conferring standing after a data breach based on an increased risk of theft or misuse

12   included at least some allegations of actual misuse or actual access to personal data."  *Tsao v.*

13   *Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021) (collecting cases,

14   including *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)); *see In re Zappos.com,*

15   *Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (certain plaintiffs "alleged that the hackers had already

16   commandeered their accounts or identities").  No such allegations are present here.

17          In any event, given the limited information affected by the Attack, there is no basis for

18   Plaintiffs to claim any "imminent" or "substantial" risk of the harms they purport to fear.  *First*,

19   Plaintiffs cannot plausibly claim they face any risk of "credit or identity theft," because the

20   compromised information does not include information that can be used to open new lines of

21   credit or take over existing ones.  In particular, the compromised information does not include

22   social security numbers or credit card numbers, the theft of which has properly been held to

23   create a risk of "real and immediate harm" because they provide an attacker "all the information

24   . . . needed to open accounts or spend money in the plaintiffs' names."  *Zappos.com*, 888 F.3d at

25   1026 (credit card numbers); *Krottner*, 628 F.3d at 1140 (social security numbers).  When the

26   information that has been compromised falls short of this type of sensitive information, courts

27   routinely reject attempts to premise standing on a risk of identity theft.  *See, e.g., Antman v. Uber*

28   *Techs., Inc.*, No. 15-cv-01175-LB, 2018 WL 2151231, at *9 (N.D. Cal. May 10, 2018) ("Without

1  a hack of information such as social security numbers, account numbers, or credit card numbers,

2  there is no . . . credible risk of identity theft that risks real, immediate injury.").[5]

3       *Second*, Plaintiffs' "credential stuffing" allegations, Compl. ¶ 73, are likewise

4  insufficient, because Plaintiffs allege no facts that would establish *they personally* face any risk

5  of having any online account compromised in this manner as a result of the Attack.  Credential

6  stuffing is where an attacker "takes a massive trove of usernames and passwords from a data

7  breach and tries to 'stuff' those credentials into the login page of other digital services," such as

8  "Amazon and Ebay," in order to see if they work there too.  *Id.* ¶¶ 73, 77.  But Plaintiffs Rosiak

9  and Petro did not even have a Zynga account password that was affected by the Attack to begin

10 with.  As for Plaintiffs I.C. and Johnson, they allege no facts explaining how their Zynga

11 passwords could be successfully used for credential stuffing.  Credential stuffing only works

12 where a user has reused a compromised password on another site and has not changed the

13 password on the other site since it was compromised.  Nowhere do I.C. or Johnson allege that

14 they still use the same password they used for their Zynga accounts for any specific online

15 account today, let alone an account on an e-commerce site such as Amazon or Ebay.[6]  That

16 missing allegation alone negates any claim that they face an imminent or substantial risk of harm

17 from credential stuffing.  Indeed, the Complaint acknowledges that "[t]he vast majority of email

18 [addresses] and password combos" used in a credential stuffing attack "won't work."  Compl.

19 ¶ 77.  I.C. and Johnson offer no reason to believe theirs would.

20

21 [5] *See also Rahman v. Marriott Int'l, Inc.*, No. 8:20-cv-00654, 2021 WL 346421, at *1-2 (C.D.
   Cal. Jan. 12, 2021) (holding that contact information, gender, birth date, and loyalty account
22 number "lack[ed] the degree of sensitivity required" for standing); *Stasi v. Inmediata Health
   Grp. Corp.*, No. 19-CV-2353, 2020 WL 2126317 at *5 (S.D. Cal. May 5, 2020) ("Plaintiffs'
23 failure to allege that the exposed information included their social security numbers, or similarly
   sensitive financial or account information . . . leaves Plaintiffs short of what is required."); *In re
24 Uber Technologies, Inc.*, 2019 WL 6522843, at *4 (C.D. Cal. 2019) (contrasting exposure of
   social security or credit card numbers with exposure of plaintiff's "basic contact information and
25 driver's license number," and finding no standing); *cf. Bass v. Facebook, Inc.*, 394 F. Supp. 3d
   1024, 1034 (N.D. Cal. 2019) (holding that compromised information was extensively personal
26 and immutable so as to be "similar in function to social security numbers" and sufficient to
   support standing, in conjunction with evidence that plaintiff had been "bombarded" with
27 phishing emails since the breach).

   [6] I.C. alleges he is still a minor, Compl. ¶ 7, making it unlikely that he even has any account on
28 an e-commerce site.

1    The fact that I.C. and Johnson's Games With Friends passwords were hashed makes their

2    professed concern about credential stuffing even more speculative.  A hashed password cannot

3    be used in a credential stuffing attack, since the password cannot be used to log in anywhere if it

4    is in scrambled form.   While Plaintiffs allege that the algorithm Zynga used to hash user

5    passwords is "insecure," Compl. ¶ 51, the articles they cite for this proposition discuss concerns

6    about using the algorithm for *signing digital certificates*, not for hashing passwords; and

7    moreover, the attacks on the algorithm the articles discuss are, according to the articles, merely

8    theoretically *possible*—not easy or likely.[7]   Plaintiffs allege no facts providing any reason to

9    believe that their hashed Zynga passwords have been or are likely to be successfully "de-

10   hashed," such that they could be used for credential stuffing—even assuming Plaintiffs have

11   used the passwords elsewhere.  *See generally Zappos*, 888 F.3d at 1026 (Article III standing

12   cannot be based on "speculative multi-link chain of inferences").[8]

13       *Third*, Plaintiffs cannot base their standing merely on a fear of "phishing" emails.

14   Plaintiffs make a perfunctory allegation about the possibility of "phishing attacks," asserting that

15   hackers could "potentially create targeted phishing attacks made up to look as if they are an

16   official communication from Zynga."  Compl. ¶ 75.  But Plaintiffs could receive phishing emails

17   before the Attack just as much as after—they are a fact of life for any email user.  Plaintiffs

18   provide no explanation of why a phishing email disguised as a communication from Zynga

19   would pose any particular risk to them, nor do they make any allegation that they have actually

---

[7]   *See*  Ex.  H,  *The  SHA1  hash  function  is  now  completely  unsafe*, https://www.computerworld.com/ article/3173616/the-sha1-hash-function-is-now-completely-unsafe.html, *cited in* Compl. ¶ 51 n.20 (stating that breaking algorithm to forge a digital signature is "within the capabilities of nation-states" but not "within the grasp of most attackers"); Ex. I, *Password Breach of Game Developer Zynga Compromises 170 Million Accounts*, https://www.cpomagazine.com/cyber-security/password-breach-of-game-developer-zynga-compromises-170-million-accounts/ *cited in* Compl. ¶ 52 n.21 (stating that the algorithm has been shown to be "theoretically" breakable and linking to an article describing problems with using algorithm for signing digital certificates).

[8]  The fact that Plaintiffs do not allege any fraudulent logon to any of their accounts in the year and a half since the Attack only confirms that this risk is not "imminent."  *See Clemens v. ExecuPharm, Inc.*, No. 20-3383, Memorandum and Order at 9, Dkt. No. 27 (E.D. Pa. Feb. 25, 2021) ("The speculative nature of any future harm is underscored by the fact that nearly one year has passed since the [] breach and [plaintiff] has never claimed to be a victim of fraud or identity theft because of it.").

1  received any such phishing email, let alone clicked on one.  If they did receive emails purporting

2  to be from Zynga that they were concerned might be phishing emails, they could of course

3  simply choose to ignore them.  The notion that Plaintiffs face a substantial or imminent risk of

4  harm from the possibility of receiving such emails is fanciful.  *Cf. Burgess v. Eforce Media, Inc.*,

5  No. 1:07-cv-231, 2007 WL 3355369, at *6 (W.D.N.C. Nov. 9, 2007) (no standing based on

6  "frustration" of "unwanted and unwelcomed emails").

7       Because Plaintiffs fail to allege any imminent or substantial risk of injury, Plaintiffs

8  cannot manufacture standing based on alleged mitigation-related expenses supposedly warranted

9  by the Attack, such as the "costs associated with purchasing credit monitoring and identity theft

10 protection services" or the lost time from "cancelling and reissuing [credit] cards" or "finding

11 fraudulent charges."  Compl. ¶ 131.  Plaintiffs do not even clearly allege that they have incurred

12 any such costs themselves; they instead only vaguely allege that these are injuries to "Plaintiffs

13 and Class members."  *Id.*  But in any event, it is well-established that such expenses are

14 cognizable injuries only if there is a substantial risk of identity theft that supports standing by

15 itself; such expenses cannot be used to bootstrap standing where none exists.[9]  No such risk of

16 identity theft exists here—making the mitigation actions cited by Plaintiffs simply irrelevant.

17 Credit card information or sensitive financial identifiers were not compromised in the Attack, so

18 there is no need for Plaintiffs to obtain credit monitoring, cancel credit cards, or check their bank

19 statements for fraudulent charges.[10]  Even if Plaintiffs had any basis to fear that someone could

---

[9] *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015) ("Mitigation expenses do not qualify as actual injuries where the harm is not imminent."); *In re Uber Technologies, Inc.*, 2019 WL 6522843, at *5; *Antman*, 2018 WL 2151231, at *9 (same); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1216-17 (N.D. Cal. 2014) (same); *see also Clapper*, 568 U.S. at 416 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

[10] Credit monitoring is used to monitor a person's credit report for the opening of new credit accounts or changes to existing ones.  As a government report cited in the Complaint makes clear, these risks are not present unless the data compromised can be used to open new credit lines or take over existing ones—which requires credit/debit card information and/or personally identifiable information that can be used to file a credit application in someone else's name.  *See* GAO-07-737, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (2007), http://www.gao.gov/assets/270/262899.pdf, *cited in* Compl. ¶ 86 n.49, at 30.  No such information was compromised here, and thus no need for credit monitoring exists.

use their Zynga passwords to log on to Plaintiffs' e-commerce accounts, the only step needed to eliminate *that* risk would be for them to *change their passwords* on the accounts in question—something that takes only a few minutes.  There would be no need to spend any time poring over financial statements, canceling credit cards, obtaining credit monitoring, or the like.

### B.  Plaintiffs Additionally Have Not Alleged and Cannot Show Any Immediate Threat of Repeated Injury Sufficient to Seek Injunctive or Declaratory Relief

A plaintiff must demonstrate Article III standing "with respect to each form of relief sought."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  As to injunctive relief in particular, there must be "a real and immediate threat of repeated injury."  *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (injunctive relief requires showing plaintiff "will again be wronged in a similar way").  Plaintiffs fail to plausibly allege any real and immediate threat of repeated injury here—*i.e.*, a second data breach—as would be required to justify their requested prospective relief.

Plaintiffs vaguely allege that class members are subject to a "continued risk of exposure to hackers and thieves" as long as their information "remains in Defendant's possession and is subject to further breaches," Compl. ¶ 131, but they cite no ongoing security deficiency that creates any real and immediate threat of a second data breach.  *See Dugas v. Starwood Hotels & Resorts Worldwide, Inc*., No. 3:16-cv-00014-GPCBLM, 2016 WL 6523428, at *8 (S.D. Cal. Nov. 3, 2016) (no standing for injunctive relief where plaintiff merely asserted a fear of "on-going data breaches").  Nor do they grapple with the fact that no such second breach has actually occurred in the nineteen months since the Attack—undermining any claim that the threat of such a breach is "real and immediate."  Instead, Plaintiffs' logic seems to be that a threat exists simply because a breach occurred in the past.  That facile inference does not suffice, as "past wrongs do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy."  *Lyons*, 461 U.S. at 103; *see also Updike v. Multnomah Cty*., 870 F.3d 939, 948 (9th Cir. 2017) ("past injury" "insufficient to establish that the risk of recurring injury is more than speculative"); *Dugas*, 2016 WL 6523428, at *8 (holding that an "order requiring [Defendant] to enhance [its] cybersecurity in the future . . . will not provide any relief for past

injuries or injuries incurred in the future because of a data breach that has already occurred").

Plaintiffs also fail to explain how they would be harmed *even if there were* a second breach.  As noted, Zynga reset the passwords of all affected users following the Attack—including any of Plaintiffs' passwords.  Ferris Decl. ¶ 18.  Thus, Plaintiffs' old passwords are no longer retained by Zynga, *id.*, and Plaintiffs each allege they have stopped playing Zynga games, Compl. ¶¶ 8, 13 19, 21.  There are consequently no passwords of theirs that would be subject to exposure in any second breach.  As for Plaintiffs' other information—email addresses, screen names, and, for Johnson alone, date of birth and phone number—the information is non-sensitive on its face, and Plaintiffs fail to specify how a second breach would harm them any more than the original Attack they claim harmed them.  Plaintiffs' requests for injunctive and declaratory relief reflect nothing more than a generalized concern about Zynga's security, which is insufficient to give them standing.  *See Doe v. Match.com*, 789 F. Supp. 2d 1197, 1201 (C.D. Cal. 2011) (no standing for prospective relief when plaintiff had not "shown that she ha[d] a greater likelihood of injury than any of [d]efendant's other one million subscribers").

## V.   THE LIMITATION OF LIABILITY CLAUSE IN ZYNGA'S TERMS BARS RECOVERY ON NEARLY ALL OF PLAINTIFFS' COMMON-LAW CLAIMS

Beyond the issue of standing, the broad limitation of liability provision in Zynga's Terms of Service bars nearly all of Plaintiffs' common-law claims (specifically, Counts I-IV and VII-XI)—with the sole exception being their negligent misrepresentation and intrusion upon seclusion claims (Counts V-VI, XIV-XV), which are based on allegations of willful or fraudulent misconduct, and should be dismissed for other reasons (described in Sections VI.C and VII.C).

### A.   Zynga's Terms of Service Govern Plaintiffs' Relationship with Zynga

Plaintiffs admit that by using Zynga's services, they entered into a "relationship" and formed an "agreement" with Zynga.  Compl. ¶¶ 200-05, 248.  Indeed, they bring claims for breach of contract and breach of confidence to *enforce* the terms of that relationship and agreement.  Those terms are set forth in Zynga's Terms of Service.

Plaintiffs attempt to exclude the Terms from the Court's consideration by evasively alleging they agreed only to Zynga's *Privacy Policy*, which they characterize as the document

1   "govern[ing]" their "relationship" with Zynga.  Compl. ¶ 248.  But the plain language of the

2   Terms and the Privacy Policy, both of which are incorporated by reference into the Complaint

3   and are subject to judicial notice,[11] show otherwise.  The Terms explicitly provide that "[t]hese

4   Terms of Service set out the terms and conditions that apply when you use our Services."  Ex. A

5   (2018 Terms) at 1; *see also, e.g.*, Ex. C (2011 Terms) § 1.1 (similar).  And both the Terms and

6   the Privacy Policy make clear that, to play Zynga games, players must "agree to" the Terms and

7   simply "acknowledge" Zynga's Privacy Policy.  Ex. A (2018 Terms) at 1; *see also id.* § 10.3

8   (stating that the "Terms of Service, any Supplemental Policies and any documents expressly

9   incorporated by reference herein (including the Zynga Privacy Policy), contain the entire

10  understanding of you and Zynga"); Ex. D (2018 Privacy Policy) § 3 (referring to the Terms as

11  "our contract with you").[12]  Thus, Plaintiffs' "relationship" and "agreement with Zynga" refer to

12  Zynga's Terms, which go hand-in-hand with the Privacy Policy and by their plain language are

13  the governing document.[13]

14      **B.      The Terms Contain a Broad Limitation of Liability**

15      Zynga's Terms—all versions of them from the Relevant Time Period—contain a

16  limitation of liability provision that precludes all of Plaintiffs' non-statutory claims, except

17  negligent misrepresentation and intrusion upon seclusion.  Taking the 2018 Terms as an

18

19  [11] As explained in Zynga's Request for Judicial Notice, the terms of Plaintiffs' agreement and

20  relationship with Zynga are integral to, and form the basis of, their claims, including their
    contract and breach-of-confidence claims.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th

21  Cir. 1998); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015).
    Plaintiffs cannot rely on their agreement with Zynga in the abstract, but then ignore the actual

22  agreement.  *See In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019).

23  [12] The 2014 and 2011 Terms and Privacy Policies include substantially similar provisions.  *See*
    Ex. B (2014 Terms); Ex. C (2011 Terms) §§ 1.2, 1.5; Ex. F (2011 Privacy Policy) at 1.

24  [13] If the Court believes it cannot consider the Terms on a motion to dismiss, it should convert this

25  motion to one for summary judgment and rely on the Ferris Declaration, which explains that all
    players must accept Zynga's Terms in order to play.  *See Parrino*, 146 F.3d at 706 n.4; Fed. R.

26  Civ. P. 12(d); *see also Silk v. Metro. Life Ins. Co.*, 477 F. Supp. 2d 1088, 1091 (C.D. Cal. 2007)
    (converting to summary judgment motion upon defendant's request to consider insurance plan

27  and related documents), *aff'd*, 310 F. App'x 138 (9th Cir. 2009); *Jinkins v. Temecula Towne Ctr.
    Assocs., LLC*, No. EDCV182281PSGKKX, 2019 WL 1652086, at *2 (C.D. Cal. Feb. 15, 2019)

28  (converting to summary judgment motion to consider settlement agreement).

example,[14] the Terms expressly disclaim liability for (i) "any indirect, incidental, special, exemplary, or consequential damages . . . arising out of the use of . . . the service" or (ii) "the conduct of third parties." Ex. A § 14.  The Terms further provide that in no event shall Zynga be liable for more than "the total amount you have paid [Zynga] in the one hundred and eighty (180) days immediately preceding the date on which you first assert any such claim."  *Id.* (capitalization omitted).  These disclaimers "apply to all damages or injury caused by . . . or related to use of" Zynga's services, "under any cause of action in any jurisdiction, including, without limitation, actions for breach of warranty, breach of contract, or tort (including negligence)"—"to the fullest extent allowed by any law that applies."  *Id.*  The "law that applies" is California Civil Code § 1668, which allows for disclaimers of liability for non-statutory claims, except for fraud or willful misconduct.  Cal. Civ. Code § 1668.

The damages plaintiffs seek—such as credit monitoring and other mitigation costs, Compl. ¶ 131—are indirect and consequential, and are thus barred under the limitation of liability provision.  *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004) (explaining that "direct" or "general" damages are those "that flow directly and necessarily from a breach of contract," whereas "consequential" or "special" damages are those that do not); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *45-46 (N.D. Cal. Aug. 30, 2017) (out-of-pocket mitigation costs were consequential damages barred by the limitation of liability clause).  Moreover, Plaintiffs do not allege that they paid Zynga *any* money for Zynga's free game services in the 180 days prior to the filing of their lawsuit, which independently bars their damages claims under the limitation of liability provision.[15]

This means that Plaintiffs' non-statutory claims—other than negligent misrepresentation

---

[14] Zynga's 2018, 2014, and 2011 Terms contain substantively similar limitation of liability clauses.  *See* Ex. B (2014 Terms) § 15; Ex. C (2011 Terms) § 7.2.

[15] Only Plaintiff Petro alleges he made in-game purchases, but he claims he made them in games not affected by the Attack.  Compl. ¶ 19.  In any event, the purchases were necessarily made more than 180 days before filing suit, because he stopped playing Zynga games in 2018, Compl. ¶ 19, whereas his lawsuit was filed in 2020.

and intrusion upon seclusion, because they involve allegations of fraud or willful conduct—must be dismissed because Plaintiffs cannot establish any damages.  *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) (dismissing breach of contract and related claims under limitation of liability clause); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124 (2015) (same). Plaintiffs' negligence claims in particular are barred, because the limitation of liability clause expressly limits liability for negligence.  *See N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-CV-02575-HSG, 2016 WL 5358590, at *17 (N.D. Cal. Sept. 26, 2016) (dismissing negligence claim because limitation of liability "explicitly include[d] 'negligence' claims within its scope").

Plaintiffs do not—and cannot—allege any basis to find the liability limitation unenforceable.  Limitation of liability clauses "have long been recognized as valid in California." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (citation omitted).  They are particularly "appropriate when one party is offering a service for free to the public," *YouTube*, 244 Cal. App. 4th at 125, or where the service offered is purely recreational, *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019) ("Facebook is not a necessity of life and anyone who does not like the terms of service can go elsewhere.").  Both considerations doom any unconscionability argument here.  *See Darnaa, LLC v. Google Inc.*, 756 F. App'x 674, 676 (9th Cir. 2018) (rejecting unconscionability argument with respect to free video-streaming service, given that "limitation of liability provision . . . provide[s] a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need") (citation omitted).

Plaintiff I.C. attempts to "disaffirm" the Terms of Service, Compl. ¶¶ 9, 40, but his allegations are insufficient under both California and Kansas law.  The disaffirmance inquiry is governed by "the law of the state where the contract was formed."  *R.A. v. Epic Games, Inc.,* No. CV 19-1488-GW-EX, 2019 WL 6792801, at *5 (C.D. Cal. July 30, 2019).  Under Kansas law, a minor is bound by his contracts "unless the minor disaffirms them within a reasonable time after the minor attains the minor's majority," Kan. Stat. § 38-102, and under California law, a minor may disaffirm either "before majority or within a reasonable time afterwards," Cal. Fam. Code § 6710.  Additionally, I.C. must show that he, rather than his parent, entered into a contract with

1    Zynga in order to disaffirm. *Cf. Crawford v. Sony Interactive Entertainment LLC*, No. 3:20-cv-

2    01732-JD, Order re Arbitration, Dkt. No. 25 (N.D. Cal. Mar. 30, 2021) (sending claim to

3    arbitration where parent, rather than minor child, entered into relevant contracts).  Here, I.C.

4    alleges that he is currently a Kansas resident, without alleging that he resided in Kansas at the

5    time he played Zynga games.  Compl. ¶ 8.  He does not disclose his age, merely alleging in

6    conclusory fashion that he is a "minor."  *Id.* ¶ 9.  Under either state's law, these allegations are

7    insufficient to show:  1) whether I.C. has reached the age of majority, or 2) whether I.C. has

8    effectively disaffirmed the Terms within a "reasonable time."  *Cf. Robinson v. Food Service of*

9    *Belton, Inc.*, 415 F. Supp. 2d 1227, 1231 n.1 (D. Kan. 2005) (rejecting disaffirmance argument

10   where plaintiffs "submitted no evidence concerning their age at the time of contracting").[16]

11   ## VI.   PLAINTIFFS' NEGLIGENCE AND CONTRACT-BASED CLAIMS FAIL

12          Plaintiffs' negligence, negligent misrepresentation, breach of contract, and breach of

13   implied contract claims all fail because they do not plausibly allege injuries cognizable under

14   negligence or contract law.  Additionally, they each fail to plead other necessary elements of

15   each claim and the negligence claims are barred by the economic loss rule.

16          ### A.   Plaintiffs Have Failed To Plausibly Allege Damages Cognizable Under
                     Negligence or Contract Law
17

18          A common deficiency that cuts across Plaintiffs' negligence- and contract-based claims

19   (Counts I-VIII) is that they fail to allege any type of injury cognizable under state negligence and

20   contract law.  All of these claims require as an element "appreciable and actual damage" as a

21   result of Zynga's conduct.  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015

---

[16] To the extent this Court finds that I.C. disaffirmed the Terms, he would not be bound by the limitation of liability or choice-of-law provisions in the Terms, but he appears to proceed under California law, and his claims may therefore be dismissed for the reasons set forth in this Motion. *See Holl v. United Parcel Serv., Inc.*, No. 16-CV-05856-HSG, 2017 WL 11520143, at *3 (N.D. Cal. Sept. 18, 2017) (California law applies unless a litigant "timely invokes the law of a foreign state" (citation omitted)).  However, to the extent any claims survive, a "complicated, fact-intensive" choice-of-law analysis may be required "at later stages of the litigation" to determine which law applies to each claim. *See In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013); *see also Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 2797810, at *4 (N.D. Cal. June 28, 2017) ("A detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate on a motion to dismiss where the parties have not yet developed a factual record").

(9th Cir. 2000) (contract); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012) ("*Sony I*") (negligence); *Hannan v. Bos. Sci. Corp.*, No. 19-CV-08453-PJH, 2020 WL 2128841, at *11 (N.D. Cal. May 5, 2020) (citation omitted) (negligent misrepresentation); *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015) (implied contract).  Even where a plaintiff alleges an injury-in-fact for purposes of Article III standing, the plaintiff still fails to state a state-law claim where the alleged injuries "stem from the danger of future harm." *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (dismissing negligence claim under Washington law); *see also* Ex. J, *Pruchnicki v. Envision Health Corp.*, Case No. 20-15460, slip op. at 3 (9th Cir. Apr. 21, 2021) ("Although [plaintiff] alleged sufficient injury-in-fact to support standing, whether the allegations adequately alleged compensable damages is a different question.").[17] Nominal damages, speculative harm, or the threat of harm do not suffice to plead a cognizable injury under negligence or contract law; rather, Plaintiffs must plead "nonspeculative," "appreciable and actual damage." *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010) (applying California negligence and contract law); *see also* Ex. J, *Pruchnicki*, slip op. at 3-4 (dismissing negligence-based, contract-based, and deceptive practices claims under Nevada law for failure to allege cognizable damages).

   As discussed *supra*, Section IV.A, Plaintiffs do not allege that they personally incurred any actual damage *at all*.  For example, they do not allege that they have suffered any fraud or identity theft, nor do they allege that they incurred any out-of-pocket losses.  That is insufficient. Where "personal information is compromised due to a security breach, there is no cognizable harm absent actual fraud or identity theft." *Grigsby v. Valve Corp.*, No. C12-0553JLR, 2012 WL 5993755, at *2 (W.D. Wash. Nov. 14, 2012) (applying both California and Washington law to negligence claim); *see also Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917-18 (N.D. Cal. 2009), *aff'd* 380 Fed. App'x 689, 692 (9th Cir. 2010) (no actionable contract or negligence injury when

---

[17] In *Pruchnicki*, the defendant "concede[d] that plaintiff ha[d] standing to bring her claims" related to a data breach that exposed social security numbers and financial information. *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1229, 1231 (D. Nev. 2020).

plaintiff "has no actual damages to mitigate since he has never been a victim of identity theft").[18] Thus, as recently as today, the Ninth Circuit affirmed the dismissal of claims for negligence, negligent misrepresentation, implied contract, and deceptive practices in a data breach action, where the plaintiff had not alleged that she suffered identity theft or fraud or any out-of-pocket losses (other than conclusory and unsupported allegations[19]), but instead alleged injuries including "potential fraud and identity theft," "lost time," "emotional distress," and "diminution in value of her personal information." Ex. J, *Pruchnicki*, slip op. at 3-4 (applying Nevada law). The Ninth Circuit found that these types of injuries were insufficient to show the requisite actual damages required under negligence or contract law. *See id.*

So too here. Plaintiffs' conclusory allegations—of "potential fraud" and "continued risk of exposure," as well as unspecified "physical and emotional injuries" and "time spent" in mitigation, Compl. ¶ 131—do not plead the requisite nonspeculative, appreciable and actual injury. And their benefit of the bargain theory of contract damages, Compl. ¶ 206, does not "allege[] that they paid anything" in order to use Zynga's services. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 834 (N.D. Cal. 2020) (dismissing contract claim); *see also Huynh v. Quora, Inc*., No. 18-CV-07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (same). The absence of any allegations that Plaintiffs themselves suffered actual, appreciable damages alone defeats their negligence- and contract-based claims.

### B.    Plaintiffs Fail To State a Negligence Claim

Plaintiffs' negligence claims (Counts I-IV) also fail under California's economic loss rule

---

[18] *See also, e.g.*, *Sony I*, 903 F. Supp. 2d at 963 ("[W]ithout specific factual statements that Plaintiffs' Personal Information has been misused, in the form of an open bank account, or un-reimbursed charges, the mere 'danger of future harm, unaccompanied by present damage, will not support a negligence action.'" (citation omitted)); *Holly v. Alta Newport Hosp., Inc.*, No. 219 CV 07496, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) ("bare allegation of increased risk of identity theft is 'too speculative to satisfy the pleading requirement' to show actual damages").

[19] Notably, the *Pruchnicki* district court rejected the plaintiff's "conclusory and unsupported" allegation of "'[a]scertainable losses in the form of out-of-pocket expenses ... incurred to remedy or mitigate the effects of the data breach.'" 439 F. Supp. 3d at 1234.

1  and for failure to plead necessary elements, in addition to damages discussed *supra*.[20]

2      *First*, Plaintiffs' negligence claims are barred by California's well-established economic

3  loss rule because they fail to allege, as required, any "physical harm (i.e., personal injury or

4  property damage)." *Sony I*, 903 F. Supp. 2d at 959-61.  While Plaintiffs generally allege that

5  "victims of identity theft" may suffer physical and emotional injuries, Compl. ¶¶ 81-86,

6  Plaintiffs do not allege that *they* have actually been victims of identity theft, let alone that *they*

7  have suffered any physical and emotional injuries as a result.  *See Hameed-Bolden v. Forever 21*

8  *Retail, Inc.*, No. CV1803019SJOJPRX, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018)

9  ("Plaintiffs must set forward facts as to the types of non-economic damage they suffered."); *Sion*

10  *v. SunRun, Inc.*, No. 16-cv-05834, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017) (dismissing

11  negligence claim where plaintiff "offer[ed] no specific facts about how she suffered [mental and

12  emotional distress]").  Plaintiffs also do not allege they have actually incurred costs such as

13  credit monitoring expenses—but regardless, those are precisely the type of economic injuries

14  routinely found insufficient to support negligence claims in data breach cases.  *See, e.g.*, *Castillo*

15  *v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *5-6 (N.D. Cal. Sept. 14,

16  2016); *Dugas*, 2016 WL 6523428, at *12; *In re Sony Gaming Networks & Customer Data Sec.*

17  *Breach Litig.*, 996 F. Supp. 2d 942, 962 (S.D. Cal. 2014) ("*Sony II*").

18      Nor can Plaintiffs bypass the economic loss rule via the "special relationship" exception

19  (Compl. ¶ 126), because they do not—and cannot—allege any facts that would trigger that

20  exception.  It does not apply where, as here, Plaintiffs are "in privity of contract" with Zynga.

21  *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092-93 (C.D. Cal. 2017); *see*

22  *also Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605-06 (9th Cir. 2008)

23  (describing the exception as being for "a plaintiff lacking privity with a defendant").  Nor can it

24  apply given that Plaintiffs agreed to the same contract as millions of Zynga users and they fail to

---

[20] Plaintiffs' negligence per se claims (Counts III and IV) should also be dismissed because negligence per se is a codified "evidentiary doctrine," *not* "an independent cause of action." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285-86 (2006); *see also Dent v. NFL*, 902 F.3d 1109, 1117 (9th Cir. 2018) (construing negligence per se claim as negligence claim that invokes negligence per se doctrine).

allege any transactions with Zynga that affected them "in particular." *See Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1230-31 (2008) (collecting cases and holding "ordinary buyers" of the "*same product*" do not have a special relationship with manufacturer); *see also Sony II*, 996 F. Supp. 2d at 968 (no special relationship where plaintiff did not allege relationship "beyond those envisioned in everyday consumer transactions").

*Second*, Plaintiffs fail to allege a duty of care based on either the common law or the FTC Act.  Zynga offered and allowed Plaintiffs to play free games *without requiring them* to provide any sensitive information.  Under these circumstances, there is no basis for creating an extra-contractual common-law duty to secure the limited information at issue from a third-party criminal attack.  *See, e.g.*, *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 20-24 (D.D.C. 2019) (collecting cases and finding no duty to provide reasonable data security in "typical commercial relationship"); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1158 (W.D. Wash. 2017) (finding no common-law duty to secure credit card information from criminal attack where plaintiffs alleged "omissions or nonfeasance" but did not "describe misfeasance or any affirmative act 'that created a situation of peril' for [plaintiffs]" (citation omitted)).[21]

Nor does the FTC Act, 15 U.S.C. § 45, provide a duty of care.  Compl. ¶¶ 127, 155-56, 167-68.  A plaintiff may only "borrow" a statute to prove a duty in limited circumstances, including where defendant's statutory violation "proximately caused death or injury to person or property." *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 738 (2010) (discussing four-factor showing); *see also In re SuperValu, Inc.*, 925 F.3d 955, 963-64 (8th Cir. 2019) (rejecting duty

---

[21] California state courts have not yet addressed whether to impose a common-law duty on companies to safeguard user information. *See S. California Gas Leak Cases*, 7 Cal. 5th 391, 408 n. 8 (2019) ("express[ing] no view" on duty question "in cyberspace").  But federal courts in California have found a duty of care only in the same limited circumstances as other courts. *See, e.g.*, *Top Trade v. Grocery Outlet*, No. 217CV08467SVWMRW, 2018 WL 6038297, at *4 (C.D. Cal. May 9, 2018) (finding duty where company allegedly knew its server had been hacked and nonetheless used email to exchange sensitive business information); *Castillo*, 2016 WL 9280242, at *3 (finding duty where "[a]s a condition of employment, employees disclosed the sort of information reasonable people guard closely"); *Sony II*, 996 F. Supp. 2d at 954, 966-73 (finding duty where plaintiffs were required to provide sensitive information, including credit card details, in registering accounts, but dismissing claim for failure to allege a "special relationship").  Other states have declined to recognize a duty in data-breach cases no matter the circumstance. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 816 (7th Cir. 2018) (holding that Illinois "would not impose [a] common law data security duty" on retailers.)

based on FTC Act); *Veridian Credit Union*, 295 F. Supp. 3d at 1158 (rejecting duty based on FTC Act)).  The statute allegedly violated must also specify a "*particular* course of conduct" that a defendant "must take, or refrain from taking," *Ramirez v. Nelson*, 44 Cal. 4th 908, 919 (2008) (emphasis added), and the FTC Act proscribes only "unfair . . . acts or practices," 15 U.S.C. § 45(a)(1), without setting forth a specific standard of conduct.  *See In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*, No. 1:17-MD-2807, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (rejecting FTC Act as negligence predicate under Oklahoma law because it "does not lay out objective standards").

To the extent Plaintiffs allege a duty to notify customers of the breach, Compl. ¶ 120(f), they state no support for the existence of such a duty.  By statute, states have imposed notification obligations with respect to their residents, but only with respect to certain categories of data.  *See, e.g.*, *infra* Section IX.B (discussing Iowa and Kansas notification statutes). Plaintiffs do not cite any statute applicable to them that extends a notification obligation to the limited types of information at issue here.[22]

*Third*, Plaintiffs fail to allege that a breach of duty was a "substantial factor" in causing damages.  *Mayes v. Bryan*, 139 Cal. App. 4th 1075, 1092 (2006).  The Complaint rests almost entirely on the circular assumption that because the Attack happened, Zynga must have failed to provide reasonable security.  Compl. ¶ 128.  That is no substitute for adequate pleading. Plaintiffs fail to specify what Zynga *did* that constituted an unreasonable security practice and how it caused the breach.  *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-18 (8th Cir. 2017) ("The implied premise that because data was hacked Scottrade's protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss." (citation omitted)); *cf. Springmeyer, et al.* v. *Marriott Int'l, Inc.*, No. 20-CV-867-PWG, 2021 WL 809894, at *3 (D. Md. Mar. 3, 2021) (finding lack of causation for Article III standing because "mere repetition of conclusory and nonspecific allegations" about defendant's alleged security deficiencies "does not overcome the need to plead sufficient facts

---

[22] The California law cited by Plaintiffs, Compl. ¶ 261, only protects "personal information about California residents."  Cal. Civ. Code § 1798.81.5(a)(1).

relating to what it did or did not do that led to the injuries claimed by the Plaintiffs").

### C.   Plaintiffs Fail to State a Negligent Misrepresentation Claim

Plaintiffs' negligent misrepresentation claims (Counts V-VI) also fail under the economic loss rule and for failure to plead necessary elements.

*First*, because Plaintiffs' claims are predicated on the same or similar factual allegations as their breach of contract claims, Compl. ¶¶ 175, 201 (referencing same alleged "promise[]" in both claims), *infra* Section VI.D (discussing contract claims), they are barred by the economic loss rule.  *See Linde, LLC v. Valley Protein, LLC*, 1:16-cv-00527-DAD-EPG, 2019 WL 3035551, at *17-18 (E.D. Cal. July 11, 2019) (dismissing negligent misrepresentation claim under economic loss rule where claim "plainly [sought] to redress the same grievances as the breach of contract claim"); *see also Astrium S.A.S. v. TRW, Inc.*, 197 F. App'x 575, 577 (9th Cir. 2006) (finding economic loss rule barred negligent misrepresentation claim).

*Second*, Plaintiffs fail to adequately plead the core elements of the claim, particularly given that it "is subject to Rule 9(b)'s heightened pleading standard." *Hannan v. Bos. Sci. Corp.*, No. 19-CV-08453-PJH, 2020 WL 2128841, at *11 (N.D. Cal. May 5, 2020) (citation omitted). In addition to "resulting damage," negligent misrepresentation requires "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, [and] (4) justifiable reliance on the misrepresentation." *Id.*   Plaintiffs allege that Zynga represented that it "implement[s] reasonable and appropriate security measures" while purportedly failing to "maintain security systems consistent with current technology and industry standards."  Compl. ¶¶ 176, 178.  But these cursory allegations are vague about what security measures are supposed to be at issue and why Zynga supposedly lacked reasonable ground to believe the measures were "reasonable and appropriate."[23]   As for Zynga's intent, Plaintiffs have failed to make any allegations at all.  And their conclusory allegations that they "justifiably relied on Zynga's

---

[23] Plaintiffs' allegations about supposed omissions in the Privacy Policy, Compl. ¶¶ 179, 184, 192, are beside the point because negligent misrepresentation in California "requires a positive assertion." *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 592, 596 (2011); *Patterson v. Bayer Healthcare Pharm., Inc.*, 2015 WL 778997, at *12 (E.D. Cal. Feb. 24, 2015).

representations" are insufficient, Compl. ¶¶ 183, 196, particularly because they do not allege they even read Zynga's Privacy Policy before using Zynga's services. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1088 & n.2 (1993) (holding that plaintiff "must plead that he or she actually relied on the misrepresentation" to plead a negligent misrepresentation claim). Had they read the Privacy Policy, they would have seen that it *disclaims* any "guarantee that unauthorized access, hacking, data loss, or other breaches will never occur," Ex. D (2018 Privacy Policy) § 11, which only underscores why they cannot plausibly claim any misrepresentation in the first place.

### D.    Plaintiffs Fail to State a Breach of Contract Claim

Plaintiffs' breach of contract claim (Count VII) also fails because it does not identify a contractual provision that was breached and, again, fails to allege necessary elements. Additionally, if the Court finds I.C. has disaffirmed the contract, he may not bring a contract claim, because disaffirmance "rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012).

*First*, Plaintiffs fail to allege any "specific provisions in [a] contract creating the obligation [Zynga] is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing breach of contract claim based on a Statement of Rights and Responsibilities). Plaintiffs point to a statement in Zynga's Privacy Policy that Zynga "implement[s] reasonable and appropriate security measures to help protect the security of your information both online and offline and to ensure that your data is treated securely." Compl. ¶ 201; *see* Ex. D (2018 Privacy Policy) at 16. But that language does not purport to create any obligations or make any promises on Zynga's part, and therefore cannot serve as the basis for a breach of contract claim. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610–11 (9th Cir. 2020) (holding that Facebook's Privacy Policy was not a contract because it did "not outline shared commitments to which users must abide"); *Flores v. United Parcel Serv., Inc.*, 768 F. App'x 677, 679 (9th Cir. 2019) (affirming dismissal of contract claim where "documents 'contain[] no promissory language' that would oblige UPS to use a particular mode of transportation"). Rather, it is the Terms that govern users' relationship with Zynga, while the Privacy Policy merely "tell[s]" users how Zynga "collect[s], store[s], use[s], and disclose[s]

1    personal information."  Ex. D (2018 Privacy Policy) at 1; *see also see* Ex. F (2011 Privacy

2    Policy) at 1 (explaining that the Privacy Policy "provide[s] clarity about the information [Zynga]

3    collect[s] and how [Zynga] use[s] it").  Indeed, the Privacy Policy expressly warns that Zynga

4    cannot prevent all security breaches: "While we take precautions against possible security

5    breaches of our Services and our customer databases and records, no website or Internet

6    transmission is completely secure.  We cannot guarantee that unauthorized access, hacking, data

7    loss, or other breaches will never occur."  Ex. D (2018 Privacy Policy) § 11.

8        *Second*, as with their negligence claims, Plaintiffs do not identify any failure to

9    implement reasonable security measures that was a "substantial factor" in bringing about their

10   alleged injuries.  *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 909 (2005); *supra*

11   Section VI.B.

### E.    Plaintiffs Fail to State an Implied Contract Claim

13       Like their express contract claim, Plaintiffs' implied contract claim (Count VIII) should

14   be dismissed for failure to allege a breach that was a substantial factor in bringing about their

15   alleged injuries.  *See supra* Section VI.D; *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l*

16   *Inc.*, 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015) ("The elements of stating a claim for breach of an

17   express or implied contract are the same.").  The claim also independently fails because (1) an

18   undisputed "valid, express contract . . . embrac[es] the same subject matter," *Berkla v. Corel*

19   *Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (citation omitted); (2) it is redundant of the contract

20   claim, *Mountain View Surgical Ctr. v. Cigna Health Corp.*, No. CV 13-08083 DDP AGRx, 2015

21   WL 5456592, at *2 (C.D. Cal. Sept. 17, 2015); and (3) Plaintiffs "fail[] to allege the parties'

22   conduct that form[ed] the basis of the implied contract," *Terpin v. AT&T Mobility, LLC*, 399 F.

23   Supp. 3d 1035, 1049 (C.D. Cal. 2019) (rejecting implied contract claim where complaint alleged

24   only that "opening of an AT&T wireless account" created implied contract).

### VII.    PLAINTIFFS' OTHER COMMON-LAW CLAIMS FAIL

26       Plaintiffs' other common-law claims—unjust enrichment, breach of confidence, and

27   intrusion upon seclusion—should likewise be dismissed for failure to state a claim.

28

**A. Plaintiffs Fail to State an Unjust Enrichment Claim**

Plaintiffs' unjust enrichment claims (Counts IX-X) should be dismissed because (1) an express contract encompasses the same subject matter, *see Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); (2) Zynga did not receive any benefit from the Attack, *see Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000); and (3) Plaintiffs played the games at issue for free, meaning that Plaintiffs did not pay Zynga any benefit that was unjustly retained. *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014).

**B. Plaintiffs Fail to State a Breach of Confidence Claim**

Plaintiffs' breach of confidence claim (Count XI) should be dismissed for several reasons. It is impermissibly based on the same allegations underlying their contract claims—*viz.*, that Plaintiffs' compromised information had been provided "to Zynga with the explicit and implicit understandings" that Zynga would protect it, Compl. ¶¶ 249-50, 252. *See Berkla*, 302 F.3d at 918; *Huynh*, 2019 WL 11502875, at *8 ("A breach of confidence claim [] must be based on an implied obligation or contract—not an express contract."). Moreover, the economic loss doctrine bars this tort claim in the same way it bars Plaintiffs' negligence claims. *See supra* Section VI.B; *Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, No. 08cv1595 BEN (BGS), 2010 WL 11432458, at *3 (S.D. Cal. Dec. 2, 2010). Finally, Plaintiffs do not even attempt to plead several elements of the claim, including that they "conveyed 'confidential and novel information' to" Zynga or that Zynga itself affirmatively "disclosed" the information. *Berkla*, 302 F.3d at 917; *see also In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *22 (M.D. Fla. Jan. 27, 2020) (dismissing breach-of-confidence claim in data breach context because information was stolen from, rather than "disclose[d]" by, defendant).

**C. Plaintiffs Fail to State an Intrusion Upon Seclusion Claim**

Plaintiffs' intrusion upon seclusion claims (Counts XIV-XV) should be dismissed for failure to plead the necessary elements. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601 (plaintiff must plead that "a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and "the intrusion

1   'occur[red] in a manner highly offensive to a reasonable person'" (citations omitted)).

2   *First*, Plaintiffs fail to plausibly allege any intentional intrusion *by Zynga*. Plaintiffs

3   allege that Zynga "invaded Plaintiffs' privacy" by "failing to keep Plaintiffs' PII safe, and by

4   misusing and/or disclosing said information." Compl. ¶ 276. But none of Zynga's alleged acts

5   constitutes an intrusion by Zynga, either as a matter of common sense or as a matter of law,

6   because none involves Zynga entering into a private space or obtaining unwanted access to data,

7   let alone intentionally so. *See Damner v. Facebook Inc.*, No. 20-CV-05177-JCS, 2020 WL

8   7862706, at *6 (N.D. Cal. Dec. 31, 2020) ("Plaintiff has pointed to no authority that suggests that

9   failure to take adequate measures to protect against the intentional intrusion of a third party

10   satisfies the first element of a claim for intrusion on seclusion and the Court has found none.");

11   *cf. Ruiz*, 380 F. App'x at 693 (constitutional privacy claim does not extend to "accidental or

12   negligent conduct"). Indeed, the rest of Plaintiffs' complaint belies any suggestion that Zynga

13   itself intentionally misused or disclosed their information. *See, e.g.*, Compl. ¶¶ 4, 49, 72

14   (alleging that Zynga was compromised by an outside "hacker").

15   *Second*, Plaintiffs do not plausibly allege that the intrusion was "highly offensive to a

16   reasonable person." Whether an intrusion is highly offensive looks to the "degree and setting of

17   the intrusion" and "the intruder's motives and objectives." *In re Facebook, Inc. Internet*

18   *Tracking Litig.*, 956 F.3d at 606. Here, while the Attack was undoubtedly unfortunate, Zynga

19   was itself the victim of the Attack, and only basic account information was accessed, setting the

20   incident far apart from anything resembling a "highly offensive" intrusion. Indeed, courts have

21   rejected privacy claims involving much more severe and blameworthy conduct. *See McCoy v.*

22   *Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *6–8 (N.D. Cal. Feb. 2, 2021) (no

23   highly offensive intrusion where defendant collected data without consent); *In re Google, Inc.*

24   *Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (no highly offensive intrusion

25   where defendant disclosed user information to third-party developers contrary to its own

26   policies).

27   **VIII.   PLAINTIFFS FAIL TO STATE CALIFORNIA STATUTORY CLAIMS**

28   Plaintiffs' UCL, FAL, and CLRA claims (Counts XVIII-XX) should also be dismissed

for lack of statutory standing and failure to state a claim.[24]

## A.     Plaintiffs Lack Statutory Standing Under the UCL, FAL, and CLRA

Statutory standing under the UCL, FAL, and CLRA is "substantially narrower" than *Article III standing, Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011), and Plaintiffs' barebones allegations fall short.

**No Economic Injury.**  To bring a claim under these statutes, Plaintiffs must plead "lost money or property" (UCL, FAL) or "economic" damages (CLRA).  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("To establish standing to bring a claim under [the UCL, FAL, and CLRA], plaintiffs must meet an economic injury-in-fact requirement.").  Plaintiffs fail to do so.  As an initial matter, although Plaintiffs allege a laundry list of injuries supposedly suffered by the putative class, Compl. ¶ 318, they do not allege that *they* actually suffered any of these injuries.  This is a fatal flaw on its own.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (UCL class representative must show "injury in fact and causation" "as to *himself*" (emphasis added)), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

Regardless, the "injuries" in Plaintiffs' laundry list do not amount to cognizable economic harm:

- Plaintiffs vaguely reference "the money received by Zynga for its services" (Compl. ¶ 318), but that does not equate to money that Plaintiffs or anyone else *lost*, let alone as a result of the Attack.  *Huynh*, 2019 WL 11502875, at *7; *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2019 WL 4261048, at *23 (N.D. Cal. Sept. 9, 2019).

- Plaintiffs' "benefit of the bargain" theory fails because no "money or property" was required to play the free games at issue, and any money Plaintiffs paid for in-game purchases would not have been for data security—as security measures would be the same for players who made no such purchases.  *Huynh*, 2019 WL 11502875, at *7; *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011).

---

[24] To the extent this Court finds that I.C. disaffirmed the contract, he would not be bound by the California choice-of-law provision in the Terms and could not bring these California statutory claims.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (holding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place").

- Plaintiffs' diminution in value theory fails because PII is not "property under the UCL," *Dugas*, 2016 WL 6523428, at *11; *see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 714, *aff'd in relevant part, rev'd in part*, 572 F. App'x 494 (9th Cir. 2014), and Plaintiffs include no allegations as to how their screen name, email, or password ever had "economic value to *[them]*" or how that information "lost value" as a result of the Attack, *Bass*, 394 F. Supp. 3d at 1040 (rejecting loss-of-value and benefit of the bargain theory); *see also* Ex. J, *Pruchnicki*, slip op. at 4 (rejecting diminution-in-value theory); *Huynh*, 2019 WL 11502875, at *7 (same).

- Finally, increased risk of fraud and identity theft is not itself an economic injury. *See Pruchnicki*, 439 F. Supp. 3d at 1232, *aff'd* Ex. J, *Pruchnicki*; *In re Yahoo!*, 2017 WL 3727318, at *21.

**No Actual Reliance.**  To the extent Plaintiffs' California statutory claims are based on a deception theory, Plaintiffs disregard well-established case law requiring them to allege with particularity their actual reliance on a misrepresentation or omission.  *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (UCL and FAL); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *9 (N.D. Cal. Mar. 14, 2017) (CLRA and UCL); *see also Maxwell v. Unilever United States, Inc.*, No. 5:12-CV-01736-EJD, 2014 WL 4275712, at *4 (N.D. Cal. Aug. 28, 2014) (actual reliance required under UCL "unlawful" and "unfair" prongs where "predicate unlawfulness is misrepresentation and deception").

The only specific misrepresentation that Plaintiffs allege anywhere in the Complaint—— *viz.*, Zynga's statement that it implements reasonable security measures—is not identified with particularity in their UCL, FAL, or CLRA count, let alone is any explanation given for why it was false or misleading.  *See In re Yahoo!*, 2017 WL 3727318, at *28 (reciting statements in Complaint's "general factual allegations," without "explain[ing] why any of these statements are false and misleading" or referring to them in UCL claims is insufficient).  Nor do Plaintiffs allege any facts showing that they "actually read" the statement, *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912–13 (N.D. Cal. 2020), or that it was a "substantial factor" in their decision to use Zynga, *In re iPhone App. Litig.*, 6 F. Supp. 3d 1004, 1019-20 (N.D. Cal. 2013).  As noted above, if Plaintiffs *had* read the Privacy Policy, they would have discovered that Zynga "cannot guarantee that unauthorized access, hacking, data loss, or other breaches will never occur." Ex. D (2018 Privacy Policy) § 11.  That disclaimer itself makes clear that Zynga's reasonable

1  security statement cannot be "misleading" merely due to the fact of the Attack, even if Plaintiffs

2  had properly alleged a misrepresentation in the first place.

3      **B.      Plaintiffs Fail to State a Claim Under Any UCL Prong**

4      **No "Unlawful" Conduct.**   None of Plaintiffs' five predicates for their "unlawful"

5  claim—neither the FTC Act, the FAL, the CLRA, the Customer Records Act ("CRA"), nor

6  California common law—is a sufficient basis for an actionable UCL claim.  Compl. ¶ 315.

7      As to the FTC Act, Plaintiffs do not allege a violation of the statute, because they do not

8  plausibly allege any injury, let alone a "substantial" one, nor do they connect their alleged

9  injuries to any unreasonable security practice.  15 U.S.C. § 45(n).  As to the FAL and the CLRA,

10  Plaintiffs fail to establish statutory standing or to state a claim under those laws.  *Supra* Section

11  VIII.A & *infra* VIII.C.  As to the CRA, Plaintiffs are not a member of the class the CRA was

12  intended to protect, because the CRA concerns only "personal information about California

13  residents," Cal. Civ. Code § 1798.81.5(a)(1), (b), and Plaintiffs are not California residents,

14  Compl. ¶¶ 7, 12, 18, 20.  *Sony I*, 903 F. Supp. 2d at 973 (dismissing non-resident claims because

15  the CRA "is clear that it applies only to 'ensure the personal information [of] California residents

16  [is] protected'"); *In re Yahoo!*, 2017 WL 3727318, at *36 (same with respect to § 1798.82).  As

17  to California common law, Plaintiffs do not even identify the "common law" to which they are

18  referring.  Compl. ¶ 315.  In any event, "California courts have held that a[ ] breach of contract is

19  not itself 'unlawful' conduct for purposes of California's UCL."  *Boland, Inc. v. Rolf C. Hagen*

20  *(USA) Corp.*, 685 F. Supp. 2d 1094, 1110-11 (E.D. Cal. 2010) (citing, *inter alia, Puentes v.*

21  *Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645, (2008)).  And negligence and other

22  common-law claims similarly cannot serve as UCL predicates.  *See Stearns v. Select Comfort*

23  *Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010) (negligence); *Hartless v. Clorox Co.*,

24  No. CIV. 06CV2705JAHCAB, 2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) (common-law

25  claims cannot serve as UCL predicates).

26      **No "Unfair" Conduct.**   Plaintiffs also fail to adequately plead "unfair" conduct under

27  either the "*South Bay*" test or the "tethering" test.  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th

28  Cir. 2018) (citation omitted); *see also Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361, 2014 WL

1    989742, at *9-10 (N.D. Cal. Mar. 11, 2014) (dismissing UCL unfairness claim under both tests

2    where plaintiffs failed to provide "factual support").[25]   Plaintiffs have not alleged any cognizable

3    harm, *see supra* Sections IV.A, VI.A, and VIII.A, much less a "substantially injurious" business

4    practice; they offer no factual support for their conclusory allegations of a purportedly unfair

5    practice (Compl. ¶ 314); and they do not plead with specificity how Zynga violated any

6    legislatively declared public policy (*id.* ¶ 315(d)).   Zynga expressly disclosed that it could not

7    guarantee security, and its "failure to disclose" additional information that "it had no duty to

8    disclose in the first place is not substantially injurious, immoral, or unethical." *Hodsdon*, 891

9    F.3d at 867; *see also Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152, 1170 (9th Cir. 2012).

10        **No "Fraudulent" Conduct.**   Plaintiffs fare no better under the "fraud" prong because

11   they do not identify a specific misrepresentation or omission, let alone plead under Rule 9(b) that

12   a reasonable consumer would likely have been deceived, especially given Zynga's disclosures.

13   *See Davis*, 691 F.3d at 1169; *Garcia v. Sony Comp. Entm't Am., LLC*, 859 F. Supp. 2d 1056,

14   1065-66 (N.D. Cal. 2012).

15        Plaintiffs also fail to allege any basis for inferring that Zynga *knew* its security measures

16   were inadequate.   Although Plaintiffs point to a 2012 Securities and Exchange Commission

17   filing in which Zynga reported prior hacking attempts, Compl. ¶ 55 & n.23, that filing does not

18   establish that Zynga was aware of any flaws in its security when the Attack occurred, seven

19   years *later*.   California recognizes the "common-sense notion that a defendant cannot 'disclose

20   facts of which it was unaware.'"   *In re Nexus 6P Prods. Liability Litig.*, 293 F. Supp. 3d 888, 927

21   (N.D. Cal. 2018) (citation omitted); *see also Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS,

22   2011 WL 317650, at *4 (N.D. Cal. Jan. 28, 2011) (where "UCL claim" "arises out of alleged

23   misrepresentations and omissions" plaintiff must "plead the company's knowledge of the

24   putative defect").   Plaintiffs' "conclusory allegations of knowledge" are insufficient.   *Elias v.*

25   *Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1138 (N.D. Cal. 2013) (citation omitted).

26

27   [25] Plaintiffs refer to the FTC unfairness test, Compl. ¶ 315(f), but the Ninth Circuit has rejected
     application of the FTC test in consumer actions.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504
28   F.3d 718, 736 (9th Cir. 2007).

1    Plaintiffs' omission theory is also a non-starter.  The Ninth Circuit has made clear that an

2    omitted fact is not likely to deceive anyone *as a matter of law* unless it "relate[s] to the central

3    functionality of the product," or is "contrary to a representation actually made by the defendant."

4    *Hodsdon*, 891 F.3d at 863-65 (holding that "a failure to disclose a fact one has no affirmative

5    duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL").  Plaintiffs

6    have not alleged facts sufficient to establish either here.

7    **C.      Plaintiffs Fail to State a Claim Under the FAL or CLRA**

8    Plaintiffs' FAL and CLRA claims are insufficiently pled for the same reason as the UCL

9    fraud prong.  *See Ebner v. Fresh, Inc.*, 838 F. 3d 958, 965 (9th Cir. 2016) (same "reasonable

10   consumer" test); *In Re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-CV-

11   06391-BLF, 2020 WL 7664461, at *10 (N.D. Cal. Dec. 24, 2020) (rejecting CLRA and FAL

12   claims for failure to adequately plead knowledge).

13   In addition, Plaintiffs' CLRA claims fail because they do not allege they personally

14   "purchase[d] or lease[d]" any of the affected Zynga games, which were available to play for free.

15   Cal. Civ. Code § 1761(d) (requiring "purchase or lease"); *see also In re Facebook Privacy Litig*.,

16   791 F. Supp. 2d at 717 (dismissing CLRA claims because "Plaintiff's contention that their

17   personal information constitutes a form of 'payment' to [Facebook] is unsupported by law");

18   *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *12 (N.D. Cal.

19   Mar. 26, 2013) (same).

20   **IX.     PLAINTIFFS FAIL TO STATE CLAIMS UNDER OTHER STATES' STATUTES**

21   Plaintiffs' claims under non-California data breach and consumer protection statutes

22   (Counts XII, XIII, XXI-XXVII) are barred by the choice-of-law provision in Zynga's Terms and,

23   in any event, fail on the merits.  Additionally, the claims under Wisconsin, Colorado, and

24   Michigan law (Count XXII-III, XXVI) are brought by the three plaintiffs whose claims properly

25   belong in arbitration.  *See* Zynga's Motion to Compel Arbitration.[26]

26   _____

27   [26] In any event, those claims would fail for various reasons, including failure to satisfy Rule 9(b),
     *see O'Connor v. BMW of N.A., LLC*, 18-CV-03190-CMA-STV, 2020 WL 2309617, at *12 (D.
28   Colo. Jan. 7, 2020); *Kerrigan v. ViSalus, Inc.*, 2015 WL 3679266, at *27 (E.D. Mich. June 12,

A.    **Plaintiffs' Non-California Claims Are Barred by the Choice-of-Law Provision in Zynga's Terms**

Plaintiffs' claims under non-California statutes are foreclosed by the California choice-of-law provision in Zynga's Terms. Ex. A (2018 Terms) § 16; *see also* Ex. B (2014 Terms) § 18 (same); Ex. C (2011 Terms) § 8.2 (similar). Courts routinely dismiss claims brought under other states' consumer protection laws in the face of California choice-of-law provisions, particularly where—as here, Compl. ¶ 22—the defendant is headquartered and has its principal place of business in California. *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1055–56 (N.D. Cal. 2018) (dismissing New York consumer protection claim); *Palomino v. Facebook, Inc.*, No. 16-CV-04230-HSG, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017) (New Jersey); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016) (Massachusetts). Plaintiffs' non-California statutory claims should be dismissed on this ground alone.

B.    **All of the Non-California Statutory Claims Are Meritless in Any Event**

Plaintiffs' non-California statutory claims also fail on their merits. Each is subject to Rule 9(b)'s heightened pleading standard and fails for that reason alone.[27] Plaintiffs have utterly failed to allege "'the who, what, when, where, and how' of the misconduct charged," as Rule 9(b) requires. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Each also fails for claim-specific reasons.

**Missouri.** Johnson fails to state a claim (Count XXI) under the Missouri Merchandising Practices Act, which requires an "ascertainable loss in connection with the purchase or lease of merchandise as a result of" defendant's unlawful conduct. *K.A. v. Children's Mercy Hosp.*, No. 4:18-00514-CV-RK, 2019 WL 2144815, at *4 (W.D. Mo. May 16, 2019) (citation omitted). Johnson does not allege that she paid anything to play Zynga games, Compl. ¶¶ 12-13, and "one

2015), or to plead money damages, *see T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 760 (E.D. Wis. 2020).

[27] *Haywood v. Massage Envy Fran.*, LLC, 887 F.3d 329, 334 (7th Cir. 2018) (Missouri); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *9 n.11 (C.D. Cal. Feb. 19, 2013) (Iowa); *Bray v. Gamestop Corp.*, No. 1:17-CV-1365, 2018 WL 11226516, at *6 (D. Del. Mar. 16, 2018) (Indiana); *Shepard v. DineEquity, Inc.*, No. CIV.A. 08-2416-KHV, 2009 WL 8518288, at *10 (D. Kan. Sept. 25, 2009) (Kansas).

1    . . . who never . . . pays anything of value cannot be said to have suffered damage [under the

2    MMPA]." *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057 (E.D. Mo. 2009).

3    **Iowa.**   Petro fails to state a claim (Count XXIV) under the Iowa Consumer Fraud

4    Act. *First*, the statute he invokes (Iowa Code § 714.16) authorizes actions brought by the Iowa

5    attorney general—not private actions. *Compare* Iowa Code § 714.16(7) (authorizing Iowa

6    attorney general actions), *with id.* § 714H5 (authorizing private actions). *Second*, even if Petro

7    had invoked the proper statute, he has not "prove[n] 'an ascertainable loss of money or property'

8    *caused by the misrepresentation*" as the statute requires. *Fox v. Iowa Health Sys.*, 399 F. Supp.

9    3d 780, 798 (W.D. Wis. 2019) (emphasis added). Although he alleges he paid money for in-app

10   purchases, Compl. ¶ 19, Petro does not allege that any misrepresentation *caused* the purchase.

11   **Indiana.**   Rosiak fails to state a claim (Count XXV) under the Indiana Deceptive

12   Consumer Sales Act. *First*, Rosiak does not allege "an uncured or incurable deceptive act." Ind.

13   Code § 24-5-0.5-4(a). Rosiak does not allege an *uncured* deceptive act because he does not

14   allege that the notice he supposedly gave Zynga, Compl. ¶ 391, contained the necessary level of

15   detail. *See Lehman v. Shroyer*, 721 N.E.2d 365, 368 (Ind. Ct. App. 1999). Nor does he allege an

16   *incurable* deceptive act because he does not allege Zynga acted with "intent to defraud or

17   mislead" or as part of a broader "scheme, artifice, or device" to defraud. Ind. Code § 24-5-0.5-

18   2(8). *Second*, Rosiak fails to allege that he "reli[ed] upon a misrepresentation" and suffered

19   "injury proximately caused by the reliance." *In re Sears, Roebuck & Co. Tools Mktg. & Sales*

20   *Practices Litig.*, No. 05 C 2623, 2009 WL 3460218, at *5 (N.D. Ill. Oct. 20, 2009).

21   **Kansas.**   I.C. fails to state a claim (Count XXVI) under the Kansas Consumer Protection

22   Act. *First*, he does not plausibly allege any "consumer transaction" because he does not allege

23   he ever paid Zynga anything, Compl. ¶ 8. Kan. Stat. Ann. § 50-624(c); *see Kluin v. Am. Suzuki*

24   *Motor Corp.*, 274 Kan. 888, 903 (2002) (requiring "consumer transaction" in Kansas). *Second*,

25   I.C. may not seek damages on behalf of a class under the statute, Kan. Stat. Ann. § 50-634(b),

26   and he also cannot obtain injunctive relief, *see infra* Section X. *Third*, I.C. fails to allege that he

27   was "aggrieved" because he does not allege how he relied on or was injured by any alleged

28   misrepresentation. *Id.* § 50-634; *Stein v. Sprint Corp.*, 22 F. Supp. 2d 1210, 1216 (D. Kan.

1998).  *Fourth*, he alleges that Zynga is a "person," Compl. ¶ 395, but not that Zynga is a "supplier"—the relevant question under the Kansas law.  Kan. Stat. Ann. § 50-626(a).

**Other States.**  Plaintiffs also fail to state a claim under unspecified "applicable state laws" that allegedly require Zynga to "safeguard" PII (Counts XII and XIII).  Aside from providing a seemingly random list of states, Compl. ¶ 260, Plaintiffs do not plead which states' laws they are invoking—let alone which specific statutes.  That is insufficient.  *See Gustafson v. Wells Fargo Home Mortg.*, No. 12-04875 RS, 2012 WL 12903739, at *2 (N.D. Cal. Dec. 28, 2012) (complaint that "fail[ed] to identify the specific foreclosure statutes" violated did not state a claim).  Plaintiffs also provide an indiscriminate list of notification statutes with no discussion of how their elements are met.  Compl. ¶ 261.  That likewise does not satisfy basic pleading standards.  *See Kelley v. Countrywide Home Loans*, No. CVF-09-1148 LJO DLB, 2009 WL 3489422, at *8 (E.D. Cal. Oct. 26, 2009) ("laundry list of statute and code sections" insufficient).

Only the Iowa and Kansas notification statutes are from states where Plaintiffs reside, and neither applies to the information compromised in the Attack.  *See* Kan. Stat. Ann. § 50-7a01(g) (defining "personal information" as a consumer's name plus "(1) Social security number; (2) driver's license number or state identification card number; or (3) financial account number, or credit or debit card number"); Iowa Code § 715C.1(11) (similar).[28]  The other listed statutes are from states where no Plaintiff resides, and thus fail for lack of standing.  "[I]n a putative class action, claims arising under the laws of states in which no named plaintiff resides should be dismissed for lack of standing at the motion to dismiss stage."  *Sponchiado v. Apple Inc.*, No. 18-CV-07533-HSG, 2019 WL 6117482, at *7 (N.D. Cal. Nov. 18, 2019) (collecting cases).

## X.  PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF

Finally, Plaintiffs cannot proceed on their claims for equitable relief, contained in their unjust enrichment, UCL, FAL, declaratory judgment, CLRA, and non-California statutory

---

[28] To the extent Johnson intends to state a claim based on Mo. Rev. Stat. § 407.1500—which is only tangentially referenced in the Complaint (*see* Compl. ¶¶ 343b, 343d)—that claim would be barred *both* because "only the Missouri Attorney General may bring such a claim," *McNeil v. Best Buy Co., Inc.*, 4:13CV1742 JCH, 2014 WL 1316935, at *4 (E.D. Mo. Apr. 2, 2014), *and* because it—like the Iowa and Kansas laws—does not apply to the information compromised in the Attack, Mo. Rev. Stat. § 407.1500.

1    claims.  Under "traditional principles governing equitable remedies in federal courts," Plaintiffs

2    must show that they lack "an adequate remedy at law" to obtain equitable relief like restitution,

3    declaratory relief, or an injunction.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842-43

4    (9th Cir. 2020) (affirming dismissal of UCL claim).  To obtain injunctive relief in particular,

5    Plaintiffs must also show they have "suffered an irreparable injury," *eBay Inc. v. MercExchange,*

6    *L.L.C.*, 547 U.S. 388, 391 (2006).  Here, Plaintiffs fail to make any of these showings.

7         *First*, Plaintiffs fail to adequately allege they lack an adequate remedy at law.  Indeed,

8    they cannot do so, given that they bring numerous damages claims that are based on exactly the

9    same conduct and that seek to recover for the same alleged harm as their equitable claims.  *See,*

10   *e.g.*, *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *4; *Hassell v. Uber Techs., Inc.*, 20-

11   cv-04062-PJH, 2020 WL 7173218, at *9 (N.D. Cal. Dec. 7, 2020).  Nor do Plaintiffs lack an

12   adequate remedy at law to support their request for an injunction, Compl. ¶ 298, because any

13   hypothetical future injuries "may be remedied by money damages."  *Huynh v. Quora, Inc.*, No.

14   5:18-CV-07597-BLF, 2020 WL 7495097, at *19 (N.D. Cal. Dec. 21, 2020) (in data breach case,

15   dismissing UCL claim seeking injunction requiring "industry-standard practices for protection"

16   of user data, because future harm could be "remedied by money damages").

17        *Second*, Plaintiffs do not adequately allege irreparable harm, as required for injunctive

18   relief.  They include a conclusory allegation that they will "suffer irreparable injury," Compl.

19   ¶ 298, but they do not explain how.  *See Teresa Adams v. Cole Haan, LLC*, 20-cv-00913-JVS,

20   2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) (holding that plaintiff's "conclusory statement

21   about irreparable injury" was insufficient and granting motion to dismiss claims for injunctive

22   relief); *Hassell*, 2020 WL 7173218, at *9-10 (dismissing UCL injunctive relief claim for failure

23   to plead "irreparable harm").  As explained, any future injuries Plaintiffs might hypothetically

24   experience may be compensated by money damages, and mere "economic injury" "does not

25   support a finding of irreparable harm," *Rent-A-Center, Inc. v. Canyon TV and Appliance Rental,*

26   *Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

27        Accordingly, all of Plaintiffs' claims for equitable relief fail, regardless of what legal

28   theory they are brought under.  Their unjust enrichment, UCL, FAL, and declaratory judgment

1   claims are subject to dismissal in their entirety on this basis (since equitable relief is the only

2   form of relief available under these claims[29]); and the CLRA and non-California statutory claims

3   should also be dismissed to the extent they include claims for equitable relief.  *See, e.g.*, *In re*

4   *Sony PS3 Other OS Litig.*, 551 F. App'x at 923 (unjust enrichment); *In re MacBook Keyboard*

5   *Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3-4 (N.D. Cal. Oct. 13, 2020) (UCL);

6   *Sharma v. Volkswagen AG*, No. 20-cv-02394-JST, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021)

7   (UCL, CLRA, and unjust enrichment); *Rivera v. Freeman*, 469 F.2d 1159, 1164 (9th Cir. 1972)

8   (declaratory relief); *Doc's Dream, LLC v. Delores Press, Inc.*, No. CV 15-2857-R, 2015 WL

9   12832063, at *1 (C.D. Cal. July 6, 2015) (declaratory relief).

10   **XI.   CONCLUSION**

11        For all of the foregoing reasons, the Court should grant Zynga's motion to dismiss.

12   DATED:  April 21, 2021          LATHAM & WATKINS LLP

                              */s/ Elizabeth L. Deeley*

13                          Elizabeth L. Deeley (CA Bar No. 230798)

14                          *elizabeth.deeley@lw.com*

                          505 Montgomery Street, Suite 2000

15                          San Francisco, California 94111-6538

                          Telephone:  +1.415.391.0600

16                          Facsimile:  +1.415.395.8095

17                          Susan E. Engel (*pro hac vice* )

                          *susan.engel@lw.com*

18                          555 Eleventh Street, N.W., Suite 1000

19                          Washington, D.C. 20004-1304

                          Telephone: +1.202.637.2200

20                          Facsimile: +1.202.637.2201

21                          Serrin Turner (*pro hac vice* )

                          *serrin.turner@lw.com*

22                          885 Third Avenue

23                          New York, NY 10022-4834

                          Telephone: +1.212.906.1200

                          Facsimile: +1.212.751.4864

24                          Attorneys for Defendant *Zynga Inc.*

25

---

26   [29] *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 128-30 (2009) (UCL, FAL); *Zapata Fonseca v. Goya Foods, Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (recognizing

27   equitable nature of unjust enrichment claim); *United States v. Ogden*, No. 20-CV-01691-DMR, 2021 WL 858467, at *6 (N.D. Cal. Mar. 8, 2021) ("Declaratory relief 'is a traditional remedy in

28   equity.' (citation omitted)).