Adam J. Zapala (SBN 245748)
Reid Gaa (SBN 330141)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com;
rgaa@cpmlegal.com

Scott C. Nehrbass *(pro hac vice)*
Daniel J. Buller *(pro hac vice)*
**FOULSTON SIEFKIN LLP**
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, KS 66210-2000
Tel: (913) 253-2144
Fax: (866) 347-1472
snehrbass@foulston.com; dbuller@foulston.com

E. Powell Miller *(pro hac vice)*
Sharon S. Almonrode *(pro hac vice)*
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com; ssa@millerlawpc.com

Hassan A. Zavareei (SBN 181547)
Mark Clifford *(pro hac vice)*
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com;
mclifford@tzlegal.com

Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Tel: (415) 986-1400
Fax: (415) 986-1474
jennie@andrusanderson.com

Elizabeth A. Fegan *(pro hac vice)*
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Tel: (312) 741-1019
Fax: (312) 264-0100
beth@feganscott.com

*Attorneys for Plaintiffs and the Putative Class* [Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| I.C., a minor, by and through his natural parent, NASIM CHAUDHRI, AMY GITRE, CAROL JOHNSON, LISA THOMAS, JOSEPH MARTINEZ IV, DANIEL PETRO, and CHRISTOPHER ROSIAK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br>ZYNGA, INC.,<br><br>Defendant. | Case No. 4:20-cv-01539-YGR<br><br>**SURREPLY IN OPPOSITION TO DEFENDANT ZYNGA INC.'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT** |

**SURREPLY OPPOSING MOTION TO DISMISS; Case No. 4:20-cv-01539-YGR**

# TABLE OF CONTENTS

Page

ARGUMENT ..................................................................................................................................1

    I.    Plaintiffs have suffered a concrete injury sufficient to convey standing. ................1

    II.    The Named Plaintiffs sufficiently allege that they have suffered an injury with a close relationship to a traditionally recognized harm. ..................................2

        A.    In addition to the invasion of privacy, Plaintiffs have also suffered concrete emotional, physical, and monetary harms stemming from their exposure to the risk of identity theft. ....................................................5

            1.    Plaintiffs have sufficiently alleged a substantial risk of identity theft. ....................................................................................5

            2.    Plaintiffs have sufficiently alleged emotional, physical, and monetary harms caused by exposure to the risk of identity theft. ................................................................................................6

            3.    Plaintiffs have standing based on their benefit of the bargain and diminution of value theories. .....................................................7

    III.    TransUnion supports finding that Plaintiffs have standing to seek injunctive or declaratory relief. ..................................................................................................8

CONCLUSION ...............................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................................... 6

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................................ 3

*In re Facebook Priv. Litig.*,
   192 F. Supp. 3d 1053, 1059 (N.D. Cal. 2016) ..................................................................... 7

*Gadelhak v. AT&T Servs.*,
   950 F.3d 458 (7th Cir. 2020) ................................................................................................ 3

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .......................................................................................................... 1

*TransUnion LLC v. Ramirez*,
   No. 20-297, __ S. Ct. __, 2021 U.S. LEXIS 3401 (June 25, 2021) ............................. *passim*

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) .............................................................................................. 7

**Other Authorities**

Restatement (Second) of Torts § 866 .......................................................................................... 3

Plaintiffs respond to Defendant Zynga's Reply, ECF 84, to address Zynga's reliance on a newly decided Supreme Court case, *TransUnion LLC v. Ramirez*, No. 20-297, __ S. Ct. __, 2021 U.S. LEXIS 3401 (June 25, 2021).

## ARGUMENT

**I.  Plaintiffs have suffered a concrete injury sufficient to convey standing.**

Zynga argues in its Reply that a future risk of harm from identity theft, standing alone, cannot qualify as a concrete harm under *TransUnion LLC v. Ramirez*, No. 20-297, __ S. Ct. __, 2021 U.S. LEXIS 3401 (June 25, 2021) ("*TransUnion*"). But *TransUnion* is not the silver bullet Zynga claims. When properly reviewed, the case further supports a finding that Plaintiffs have standing to sue for damages in this case.

Unlike the present case, *TransUnion* did not involve criminal hackers stealing sensitive information with the intent of committing identity theft and fraud. Rather, it involved a class of over 8,000 individuals who sued TransUnion, a credit reporting agency, "for failing to use reasonable procedures to ensure the accuracy of their credit files," in violation of the Fair Credit Reporting Act. *Id.* at *2. Prior to trial, the parties stipulated to dividing the class into two separate groups. *See id.* The first group was comprised of 1,853 class members for whom TransUnion published misleading credit reports to third-party businesses. *Id.* at *2. The misleading reports inaccurately indicated that the individuals were potential matches on a U.S. Treasury Department list of terrorists, drug traffickers, or serious criminals. *Id.* at 11. The second group were 6,332 class members that TransUnion flagged as potential terrorist list matches in their internal system, but none of the data at issue was stolen by identity hacker-identity thieves; in fact, TransUnion had <u>not</u> even published the inaccurate information of the second group to any third-party businesses during the relevant time period. *Id.* at 28. Instead, the inaccurate information sat, undisclosed to any third party, like an unmailed letter in a desk drawer. *See id.* at *30.

The Court's decision evaluated whether the plaintiffs had asserted a concrete injury.[1] The Court found that the first group of class members about whom TransUnion had published misleading

---

[1] "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotation marks omitted).

credit reports had Article III standing because they demonstrated a concrete injury. *Id.* at *8. In contrast, the second group whose internal files were not provided to third parties lacked a concrete injury and did not have Article III standing. *Id.*

According to the Court, a concrete injury is one where the plaintiff has demonstrated that they have a personal stake in the outcome. *Id.* at *16. The Court's opinion clarifies the applicable legal test for standing: "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts. . . .." *Id.* at *7. Zynga's Reply fails to even mention the Court's *central* test, and ultimately misinterprets the impact of the case as a result.

## II. The Named Plaintiffs sufficiently allege that they have suffered an injury with a close relationship to a traditionally recognized harm.

Under the relevant test enunciated in *TransUnion*, the Supreme Court directed lower courts to evaluate whether plaintiffs have asserted an injury that has a "historical or common-law analogue" for purposes of analyzing Article III standing *Id.* at *18. While the most obvious harms that are sufficient for Article III standing include "physical harms and monetary harms," the analysis does not stop there. *Id.* Intangible harms that are rooted in the common law also convey standing—in fact, they did in *TransUnion*, where the Court found that disclosure of the inaccurate credit reports was similar to intangible harms associated with damage to a plaintiff's reputation. *Id.* at *19, 27-28. The Court held that the first group of 1,853 class members had standing because they asserted a reputational injury analogous to the tort of defamation, but since there was "no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury," the second group, whose information was not disseminated, lacked standing. *Id.* at *29.

In addition to the reputational harms identified in *TransUnion*, the Court provided a list of other paradigmatic examples of intangible harms traditionally recognized as providing Article III standing. *Id.* at *19. This list is conspicuously absent from Zynga's Reply—likely because the harms asserted by the Named Plaintiffs in this case fit squarely within it. The Court's list includes *invasions to privacy* including "disclosure of private information" and "intrusion upon seclusion." *Id.* at *18-19

(citing *Gadelhak v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2020) (intrusion upon seclusion) and *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008) (disclosure of private information)).

As the Supreme Court expressly stated, an "exact duplicate" to these historically recognized harms is not required. *See TransUnion*, 2021 U.S. LEXIS 3401, at *18. Instead, courts must "look for a 'close relationship' in kind, not degree" of harm. *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462-63 (7th Cir. 2020) (Barrett, J.). Plaintiffs need not assert an injury that would support *liability* for a common law claim—rather, the injury must only "pose the same *kind* of harm that common law courts recognize." *Id.* (emphasis in original). For instance, the *TransUnion* plaintiffs did not have to actually plead and prove the tort of defamation to establish standing. *TransUnion*, 2021 U.S. LEXIS 3401, at * 28. Rather, they only had to show that their intangible reputational interests were harmed. *Id.*

In *Gadelhack*, a Seventh Circuit case cited favorably in *TransUnion*, the plaintiff brought a class action against AT&T for violations of the Telephone Consumer Protection Act based on a "few unwanted automated text messages." 950 F.3d at 462-63. While the texts were "too minor an annoyance to be actionable at common law" they, nevertheless, were a sufficiently concrete harm to support Article III standing because their nature was similar, but not identical, to harms stemming from the tort of intrusion upon seclusion. *Id.*

The Ninth Circuit has similarly found that privacy violations "have long been actionable at common law." *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 598 (9th Cir. 2020). These common law protections to privacy "encompass[] the individual's control of information concerning his or her person." *Id.*

Here, all named Plaintiffs have alleged harm to their privacy interests. *See* Restatement (Second) of Torts § 866 (Interference with Privacy). Each named Plaintiff alleges that Zynga caused their privacy to be violated by failing to safeguard their personal information from unauthorized disclosure. (CAC ¶¶ 2, 7-21, 87, 406, 416, 421.) *See also* Ferris Decl. ¶¶ 12, 13, 16. Additionally, the Plaintiffs allege that Zynga caused a highly offensive intrusion into Plaintiffs' private affairs and a serious invasion of Plaintiffs' privacy interests by misusing and disclosing their PII. (CAC ¶¶ 275-292, 424.)

Zynga notes that, in *TransUnion*, class members lacked standing when the only injury they asserted was the mere risk that inaccurate information might be shared about them and their reputations harmed in the future. But here, the relevant historically recognized interest (privacy) has *already* been destroyed by the data breach. The Plaintiffs' private information is not sitting safely in Zynga's internal systems, like the 6,332 class members in *TransUnion* who never had their inaccurate information published to any entity outside *TransUnion* itself. Unlike in *TransUnion*, where individuals' *reputations* were wholly unaffected by the inaccurate information housed in their internal files, the Plaintiffs' *privacy* is already damaged—the Plaintiffs' PII is presently in the hands of criminal hackers and being sold on the dark web whose intent to misuse the data is beyond doubt. (CAC ¶¶ 72, 406.)

Moreover, the facts of the *TransUnion* case further clarify why Article III standing exists in this case. There, as noted, the Court found plaintiffs' theory that the defendant had inadequate protocols to ensure accurate credit reports was insufficient, standing alone, to confer Article III standing without a concomitant *publication* of such inaccurate information to a third party. *TransUnion*, 2021 U.S. LEXIS 340, * 29 ("The initial question is whether the mere existence of a misleading OFAC alert in a consumer's internal credit file at TransUnion constitutes a concrete injury. As Judge Tatel phrased it in a similar context, 'if inaccurate information falls into' a consumer's credit file, 'does it make a sound?'" The Supreme Court answered in the negative.). But unlike the 6,332 class members in *TransUnion* who never had inaccurate information published to any entity outside TransUnion itself, the Plaintiffs in this case are not merely alleging that Zynga has inadequate security measures that may—*at some point in the future*—lead to a data breach and dissemination of sensitive material to outside parties. That breach—or publication, as framed by the facts of *TransUnion*—has *already* occurred. Plaintiffs' private information has already been disseminated to cyber criminals as a result of Zynga's inadequate security protocols. The harm has occurred. As a result, this dispute is not "hypothetical or abstract . . ." nor are Plaintiffs seeking an "advisory opinion[]" in this case about the likelihood of Zynga's inadequate security measures leading to a data breach at some point in the future. *Id.*, *17. *TransUnion*, therefore, stands on all fours with Plaintiffs' allegations concerning Article III standing in this case.

**SURREPLY OPPOSING MOTION TO DISMISS; Case No. 4:20-cv-01539-YGR**                      4

Finally, contrary to Defendants' arguments in this case, the 1,853 class members for whom TransUnion published misleading credit reports to third-parties did not need to demonstrate some further economic harm as a result of the publication, or defamatory statement, such as a lost employment opportunity or some other *consequential* damage beyond the initial publication itself. *See id.*, *27 ("We have no trouble concluding that the 1,853 class members suffered a concrete harm that qualifies as an injury in fact."). The mere publication of the material alone, without consequential damages, was sufficient to confer Article III standing on the plaintiffs in *TransUnion*. And yet, contrary to the Supreme Court's holding, that is exactly what Zynga says is required in this case—that is, that Plaintiffs must demonstrate some further economic harm beyond the initial invasion of their privacy and the dissemination of private information to cyber criminals. There is no support for this position and, in fact, the Supreme Court's holding in *TransUnion* flatly rejects it.

      **A.    In addition to the invasion of privacy, Plaintiffs have also suffered concrete emotional, physical, and monetary harms stemming from their exposure to the risk of identity theft.**

Zynga recognizes that "*TransUnion* does leave open the possibility" that Plaintiffs establish standing when the exposure to the risk of future harm causes a separate concrete harm. (ECF 84, p. 10.) There, the risk of future harm did not establish standing on its own, but standing could have been demonstrated had the plaintiffs been "independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury) from the mere risk that their credit reports would be provided to third-party businesses." *TransUnion*, 2021 U.S. LEXIS 3401, *33-34.

Here, Plaintiffs have asserted a substantial risk of identity theft *and* separate harms caused by exposure to the risk of identity theft, including emotional, physical, and monetary harms.

      **1.    Plaintiffs have sufficiently alleged a substantial risk of identity theft.**

The *TransUnion* plaintiffs failed to establish a sufficient risk of future reputational harm because they could point to <u>no evidence</u> in the record, even after a lengthy trial, that established that third parties would request their credit information or TransUnion would intentionally or accidently disclose it. *Id.* at *33-34.

In contrast, at the motion to dismiss stage, the Plaintiffs have alleged an abundance of facts that support that identity theft is imminent in the wake of the Zynga data breach. (*See generally* Opp. to M. to Dismiss, ECF 78, § I.A.ii.) Zynga's Reply improperly focuses on the minutia of information stolen in the breach, an approach courts reject. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1034 (N.D. Cal. 2019) (quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027-29 (9th Cir. 2018)). Here, unlike *TransUnion*, criminal actors have stolen Plaintiffs' sensitive information with the express intent of committing fraud and identity theft; indeed, Plaintiffs allege that fraudulent conduct has already begun. (CAC ¶ 78.) And Mr. Jaffe's declaration shows that thieves are already actively using the information stolen in the data breach for identity theft and fraud. (Jaffe Decl., ECF 81, ¶ 5.) Thus, Plaintiffs have sufficiently asserted that they face a substantial risk of identity theft. (*See* Opp. to M. to Dismiss, ECF 78, § I.A.ii.)

### 2. Plaintiffs have sufficiently alleged emotional, physical, and monetary harms caused by exposure to the risk of identity theft.

In *TransUnion*, the Court contemplated that emotional or psychological harm would suffice for Article III standing by analogy to the tort of intentional infliction of emotional distress. *See TransUnion*, 2021 U.S. LEXIS 3401, at *33-34. And the Court held that if a defendant has caused monetary or physical injury to the plaintiff, the plaintiff suffered a concrete injury in fact under Article III. *Id.* at *18-19.

Although the *TransUnion* plaintiffs did not assert that they suffered emotional distress or any other physical or monetary injury, here the Plaintiffs have alleged that they suffered all three as a result of the risk of identity theft. *Id.* at *32, n.7. The Complaint includes specific and particularized allegations that the named Plaintiffs have suffered "out-of-pocket expense and time devoted to mitigating the effects of the Data Breach. . . ." (CAC ¶ 87; *See also* CAC ¶¶ 5, 6, 21, 85, 89, 90.) And the Complaint alleges that the Zynga data breach caused "emotional, and physical harm to . . . Plaintiffs." (CAC at § F., ¶¶ 79-87.) These allegations are sufficient to establish standing at the motion to dismiss stage of the lawsuit.

Zynga claims these injuries lack evidentiary support. But plaintiffs must only demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation."

*TransUnion,* 2021 U.S. LEXIS 3401, at *25-26. Zynga has not raised an attack challenging the factual accuracy of Plaintiffs' alleged emotional, physical, and monetary damages—it has provided no affidavits or other evidence to counter the Plaintiffs' allegations of emotional distress or mitigation efforts, nor would that be appropriate in any event at this stage. Rather, Zynga raises a facial attack claiming that the allegations themselves are insufficient. But, the court presumes the truth of the allegations asserted in the complaint. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 (9th Cir. 2018) (pointing to the implausibility or absence of certain facts is appropriate for summary judgment, but it does not support a challenge to standing at the motion to dismiss stage).

### 3. Plaintiffs have standing based on their benefit of the bargain and diminution of value theories.

*TransUnion* further directs a finding that Plaintiffs' benefit of the bargain and diminution of value theories are sufficient to convey standing. Each theory asserts that Plaintiffs have suffered monetary injuries that the Court recognizes as being rooted in history and the common law. *See TransUnion,* 2021 U.S. LEXIS 3401, at *18-19.

First, the benefit of the bargain theory conveys standing. Zynga alleges that Plaintiffs cannot show that they bargained for a particular level of security. But Plaintiffs allege that they did bargain for a *reasonable* level of security and would not have disclosed their information without that level of security. (CAC ¶¶ 7-21, 48, 72, 87, 88.) Zynga's services were not free—all named Plaintiffs provided their valuable PII in exchange for access to the Zynga's games and two named Plaintiffs allege making in-app purchases. (CAC ¶¶ 7, 10, 12, 14, 16, 18, 19, 20.) *See, e.g., In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053, 1059 (N.D. Cal. 2016) (Plaintiffs gave up valuable PII for access to a website).

Second, Zynga offers a single sentence in response to Plaintiffs' diminution-in-value theory as it relates to Article III standing: that to succeed on this theory, Plaintiffs must allege (1) the existence of a market for their PII, and (2) an impairment of the Plaintiffs' ability to participate in that market. But the Complaint includes these two allegations, which convey standing based on lost monetary value—a historically recognized injury. (CAC ¶¶ 48, 72, 87, 88, 90, 220.) *See TransUnion,* 2021 U.S. LEXIS 3401, at *18-19.

**III.    TransUnion supports finding that Plaintiffs have standing to seek injunctive or declaratory relief.**

Zynga alleges that because Plaintiffs fail to show concrete injury, they cannot show a real and immediate threat of *repeated* injury. But Plaintiffs have shown a concrete injury sufficient to convey standing to bring their damages claims. (*See* infra, at A.) Furthermore, the *TransUnion* decision clarified that, even when occurring alone, "a material risk of future harm can satisfy the concrete-harm requirement" for injunctive relief. *Id.* at *31.

Injunctive relief is proper here. Zynga continues to store passwords and other sensitive PII in a highly unsecure manner—it does not matter if Zynga has reset some passwords because Zynga continues to store the new, reset passwords irresponsibly and with outdated security measures. (CAC ¶¶ 51, 68, 120, 131, 295-297.)

Zynga also inaccurately claims that it disclosed the information compromised for each Plaintiff. But Zynga has never confirmed this information for Plaintiffs Gitre, Thomas, and Martinez, or any other members of the proposed class. (*See* Ferris Decl.; CAC ¶¶ 59-70.)

**CONCLUSION**

The Supreme Court's recently decided *TransUnion LLC v. Ramirez*, No. 20-297, __ S. Ct. __, 2021 U.S. LEXIS 3401 (June 25, 2021) opinion clarifies the relevant test for evaluating whether Plaintiffs have sufficiently alleged Article III standing. Under that test, the named Plaintiffs have suffered historically recognized injuries and, therefore, have standing to bring their damages claims. Zynga invaded the Plaintiffs' privacy interests by failing to safeguard their personal information from a data breach. The resulting substantial risk of identity theft stemming from the data breach caused additional concrete injuries to the Plaintiffs, including emotional and physical injuries, and the monetary cost of identity theft monitoring services. The Plaintiffs also have Article III standing because they gave up their valuable PII in exchange for bargained-for security that Zynga failed to provide, and because the Plaintiffs' PII has diminished in value—both injuries similar to historically recognized monetary injuries.

/ / /

| | | |
|---|---|---|
| 1 | Dated:   July 16, 2021 | Respectfully submitted, |
| 2 | | By: /s/Adam J. Zapala |
| 3 | | Adam J. Zapala (SBN 245748)<br>Reid Gaa (SBN 330141) |
| 4 | | **COTCHETT, PITRE & McCARTHY, LLP**<br>840 Malcolm Road, Suite 200 |
| 5 | | Burlingame, CA  64010<br>Telephone: (650) 697-6000 |
| 6 | | Facsimile: (650) 697-0577<br>azapala@cmplegal.com |
| 7 | | rgaa@cmplegal.com |
| 8 | | |
| 9 | | Scott C. Nehrbass *(pro hac vice)*<br>Daniel J. Buller *(pro hac vice)* |
| 10 | | **FOULSTON SIEFKIN LLP**<br>32 Corporate Woods, Suite 600 |
| 11 | | 9225 Indian Creek Parkway<br>Overland Park, KS 66210-2000 |
| 12 | | Tel: (913) 253-2144<br>Fax: (866) 347-1472 |
| 13 | | snehrbass@foulston.com<br>dbuller@foulston.com |
| 14 | | |
| 15 | | E. Powell Miller *(pro hac vice)*<br>Sharon S. Almonrode *(pro hac vice)* |
| 16 | | William Kalas *(pro hac vice pending)*<br>**THE MILLER LAW FIRM, P.C.** |
| 17 | | 950 W. University Dr., Suite 300<br>Rochester, Michigan 48307 |
| 18 | | Telephone: (248) 841-2200 |
| 19 | | Fax: (248) 652-2852<br>epm@millerlawpc.com |
| 20 | | ssa@millerlawpc.com |
| 21 | | *Attorneys for Plaintiffs I.C., Amy Gitre, and the* |
| 22 | | *Proposed Class* |
| 23 | | Hassan A. Zavareei (State Bar No. 181547) |
| 24 | | Mark Clifford (*pro hac vice*)<br>**TYCKO & ZAVAREEI LLP** |
| 25 | | 1828 L Street NW, Suite 1000<br>Washington, D.C. 20036 |
| 26 | | Telephone: (202) 973-0900<br>Facsimile: (202) 973-0950 |
| 27 | | hzavareei@tzlegal.com<br>mclifford@tzlelegal.com |
| 28 | | |

**SURREPLY OPPOSING MOTION TO DISMISS; Case No. 4:20-cv-01539-YGR**   9

*Attorneys for Plaintiffs Carol Johnson and Lisa Thomas, and the Proposed Class*

Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com

Elizabeth A. Fegan (pro hac vice)
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com

Lynn A. Ellenberger (*pro hac vice*)
**FEGAN SCOTT LLC**
500 Grant St., Suite 2900
Pittsburgh, PA 15219
Telephone: (412) 346-4104
Facsimile: (312) 264-0100
lynn@feganscott.com

J. Barton Goplerud (motion for pro hac vice forthcoming)
**SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.,**
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
goplerud@sagwlaw.com

*Attorneys for Plaintiffs Joseph Martinez IV, Daniel Petro, Christopher Rosiak, and the Proposed*